**Donald BEASON, Plaintiff,**

v.

**UNITED TECHNOLOGIES CORP., HAMILTON STANDARD DIVISION, Defendant.**

**No. CIV. A. 3:97CV2654(CFD).**

United States District Court, D. Connecticut.

Feb. 10, 1999.

Gregg D. Adler, Peter D. Goselin, Livingston, Adler, Pulda & Meiklejohn, Hartford, CT, for plaintiff.

Henry A. Platt, Gary L. Lieber, Schmeltzer, Aptaker & Shepard, Washington, D.C., Edward J. Dempsey, United Technologies Corporation, Hartford, CT, for defendant.

## MEMORANDUM OPINION AND ORDER

DRONEY, District Judge.

The plaintiff, Donald Beason ("plaintiff" or "Beason"), brings this action against his employer, United Technologies Corporation, Hamilton Standard Division ("defendant" or "Hamilton Standard"), asserting claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–58, et seq. Pursuant to Federal Rule of Civil Procedure 12(c), Hamilton Standard has filed a motion for judgment on the pleadings [Doc. # 12] arguing that Beason's claims are barred by the Collective Bargaining Agreement ("CBA") between Hamilton Standard and the International Association of Machinist and Aerospace Workers, AFL–CIO, Lodge 743, Affiliated with District Lodge 91 ("Union"). For the reasons set forth below, the defendant's motion is DENIED.

## I. BACKGROUND AND FACTS [1]

Donald Beason worked at Hamilton Standard from December, 1979, until he was injured on the job in September, 1992. After he was injured, Beason received workers' compensation benefits and remained on medical leave until he was laid off in March, 1993, due to lack of work. Following his layoff, Beason's health improved to the point where he was able to return to work. In September, 1995, Beason was recalled to work by Hamilton Standard, but was instructed to first report to Hamilton Standard's medical center for a medical evaluation. After his evaluation, Beason was informed by Hamilton Standard that he could not return to work because of his medical restrictions. Beason disputed Hamilton Standard's findings concerning his ability to work.

At all times relevant to this dispute, Beason was a member of the bargaining unit covered by the CBA. On November 1, 1995, the Union filed a grievance on behalf of Beason and four other Hamilton Standard employees who were not recalled to work, alleging that Hamilton Standard violated the non-discrimination clause contained in the CBA. The CBA non-discrimination clause states:

The Company and the Union recognize that employees covered by this

---

1. The recited facts are taken from the pleadings and their attached exhibits, which are considered part of the pleadings for all purposes. See Fed.R.Civ.P. 10(c).

Agreement may not be discriminated against in violation of the provisions of the Labor–Management Relations Act, 1947, as amended; Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; and the Vocational Rehabilitation Act of 1973; or any other state or federal statute which effects the employment of employees covered by this Agreement.

The Union grievance was submitted to arbitration in July, 1996, in accordance with the arbitration provisions of the CBA. The arbitration provisions set forth in the CBA provide, in pertinent part:

(a) Any contractual grievance not settled ... shall be submitted to arbitration upon the request of either party ....

(b) Other grievances arising under this contract which are not settled ... may be referred to arbitration if the company and Union mutually agree in writing.

(c) Except for the grievances which can be arbitrated under [ (a) or (b) ], no disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation or application of the provisions of this Agreement shall be submitted to any Arbitrator for decision.

In October, 1996, the arbitrator denied the Union's grievance and found that Hamilton Standard had not violated the ADA.

While the Union grievance was pending, Beason filed a charge of disability discrimination with the Connecticut Commission on Human Rights and Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC"). The CCHRO investigation concluded that there was reasonable cause to believe that Beason had been discriminated against by Hamilton Standard in violation of the ADA and the CFEPA. Beason then filed this action.

After filing its answer and affirmative defenses to Beason's complaint, Hamilton Standard moved for judgment on the pleadings. Hamilton Standard argues that Beason's complaint must be dismissed because he is required to arbitrate his employment discrimination claims in accordance with the mandatory grievance and arbitration procedures set forth in the CBA. Hamilton Standard also argues that Beason's claims are barred by the prior decision of the arbitrator which denied the Union grievance brought on behalf of Beason and the four other employees.

Beason responds that his ADA and CFEPA claims are not subject to the mandatory arbitration provisions of the CBA and that he is not barred by the previous decision of the arbitrator from pursuing this lawsuit.

## II. STANDARD

When considering a motion for judgment on the pleadings made pursuant to Rule 12(c), a court must accept the nonmovant's allegations as true and draw all reasonable inferences in favor of the nonmovant. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994); *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985). Judgment on the pleadings shall not be awarded to the defendant unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Sheppard,* 18 F.3d at 151; *Bloor,* 754 F.2d at 61. *See also Burns Int'l Sec. Servs., Inc. v. International Union,* 47 F.3d 14, 16 (2d Cir.1995) ("Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law.").

## III. DISCUSSION

A. *The CBA Grievance and Arbitration Provisions*

■ The CBA does not require Beason to submit his ADA and CFEPA claims to the grievance and arbitration process. The relevant grievance and arbitration sections of the CBA do not mention statutory discrimination claims. The grievance and

arbitration provisions of the CBA apply to "contractual" disputes, not statutory claims under the ADA or CFEPA. In addition, the CBA provides that no dispute, other than a "contractual dispute," shall be submitted to arbitration. Since the plaintiff's employment discrimination claims are statutory, not contractual, and do not arise under the CBA, Hamilton Standard's argument that Beason must bring his claims through the grievance and arbitration process is unavailing. *See Zarzycki v. Hamilton Standard,* No. 3:96CV1782, 1997 WL 380434 at *2 (D.Conn. June 12, 1997) (arriving at same conclusion after interpreting the same CBA provisions).

This approach is also consistent with the Supreme Court decisions in *Wright v. Universal Maritime Serv. Corp.,* — U.S. ——, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The first of these three cases, *Gardner–Denver,* held that a union member's statutory cause of action under Title VII was not waived by the prior arbitration of his claim under a collective bargaining agreement. *Gardner–Denver,* 415 U.S. at 49–51, 94 S.Ct. 1011. *Gilmer,* however, held that an employee's claim brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* was subject to compulsory arbitration under an arbitration provision in a securities registration form signed by the individual employee. *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647. In *Wright,* the Court determined that the collective-bargaining agreement in question did not contain a valid waiver of an employee's right to a federal judicial forum for his ADA claim because the waiver was not "clear and unmistakable."

*Wright,* 119 S.Ct. at 396 ("[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable.") (citations omitted). The majority opinion in *Wright,* however, declined to address the more fundamental question of whether a "clear and unmistakable" waiver in a collective bargaining agreement can be enforceable. *See Wright,* 119 S.Ct. at 395, 397 & n. 2.

In *Wright* the Supreme Court recognized the "tension" which exists between its decisions in *Gardner–Denver* and *Gilmer.* The majority opinion in *Wright* noted that *Gardner–Denver* held that under a collective bargaining agreement "an employee's rights under Title VII are not susceptible of prospective waiver," while *Gilmer* held that an arbitration clause waiving an employee's right to a federal judicial forum for an ADEA claim could be enforceable if contained in an individual employment contract. *Wright,* 119 S.Ct. at 395. Rather than resolve the question of whether an arbitration clause in a collective bargaining agreement could ever waive an employee's right to a federal judicial forum for statutory employment claims, the Court in *Wright* determined that the waiver contained in the collective bargaining agreement was too general and did not explicitly incorporate statutory antidiscrimination requirements.[2] *Id.* at 396–97. The Court did state, however, that the broad arbitration clause in *Gilmer* would not be explicit enough to apply to collective bargaining agreement waivers.[3] *Id.* at 397.

As previously discussed, the CBA here requires arbitration for "contractual" disputes, not statutory claims under the ADA or CFEPA. Although the non-discrimination language in the CBA—contained in a

---

**2.** The collective bargaining agreement in *Wright* provided for arbitration of "matters under dispute." Wright, 119 S.Ct. at 396.

**3.** The arbitration clause in *Gilmer* provided for the arbitration of "any dispute, claim or controversy." *See Gilmer,* 500 U.S. at 23, 111 S.Ct. 1647; *Wright,* 119 S.Ct. at 397.

different section than the arbitration clause—states that employees may not be discriminated against in violation of any state or federal statute, that is not the same as requiring union members to *arbitrate* such statutory claims. Moreover, the non-discrimination clause in the CBA does not even specifically refer to the ADA or CFEPA. Therefore, as in *Wright,* the language at issue here is not a "clear and unmistakable" waiver of ADA claims and thus is not enforceable.[4] *See Wright,* 119 S.Ct. at 397.

### B. *The Prior Arbitration of the Union Grievance*

■ Hamilton Standard's second argument for judgment on the pleadings is that Beason's ADA and CFEPA claims are barred by the earlier decision of the arbitrator, who denied the Union's grievance brought on behalf of Beason and four other Hamilton Standard employees and found that Hamilton Standard did not violate the ADA when it failed to recall Beason and the other employees. The court finds that Beason's claims are not precluded by the earlier decision of the arbitrator.

The issues raised by Hamilton Standard concerning the preclusive effect of the arbitrator's prior ruling are almost identical to the issues presented in *Gardner–Denver.* The plaintiff in *Gardner–Denver* was a drill operator who brought an action in federal court claiming that he had been discharged and discriminated against on the basis of race. The plaintiff's union had previously filed a grievance on his behalf claiming a violation of the non-discrimination clause of the union's collective bargaining agreement. An arbitrator ruled against the union and determined that the defendant-employer had just cause to discharge the plaintiff. In the district court, the defendant-employer was granted summary judgment. The district court found

that because the plaintiff had previously submitted his race discrimination claim to the arbitrator, he was precluded from bringing his race discrimination claim in federal court. The decision was affirmed by the Tenth Circuit Court of Appeals, but reversed by the Supreme Court. *See Gardner–Denver,* 415 U.S. at 38–43, 94 S.Ct. 1011 (summarizing history of the case).

The basis for the Supreme Court's reversal was threefold. First, the Court emphasized the difference between contractual rights under a non-discrimination clause of a collective bargaining agreement and statutory rights granted by legislative act, noting that labor arbitrators only have jurisdiction to determine contractual rights. *Id.* at 49–54, 94 S.Ct. 1011. Second, the Court determined that Title VII was intended to afford litigants the availability of a federal judicial forum and that deferral to the "comparatively inferior" labor arbitration process would be inconsistent with Congressional intent. *Id.* at 56–58, 94 S.Ct. 1011. Finally, the Court observed that the interests of the individual employee may be subordinated to those of the union in the arbitration process under a collective bargaining agreement. *Id.* at 58 n. 19, 94 S.Ct. 1011. *See also Lynch v. Pathmark Supermarkets,* 987 F.Supp. 236, 240–41 (S.D.N.Y.1997) (providing similar analysis of *Gardner–Denver* ).

Hamilton Standard attempts to distinguish the decision in *Gardner–Denver* on the basis that the presumption against the adequacy of the arbitration forum for statutory rights has been eliminated by the decision in *Gilmer.* Hamilton Standard also urges a narrow reading of *Gardner–Denver,* limiting it to Title VII claims, and argues that the ADA expressly encourages the arbitration of discrimination claims. Both of these arguments are unpersuasive

---

4. The more difficult question of whether a union-negotiated waiver can ever deprive an employee of his statutory right to a judicial forum for employment discrimination claims need not be addressed. *See Wright,* 119 S.Ct.

at 395, 397 n. 2 (arriving at same conclusion); *Zarzycki,* 1997 WL 380434 at *3 n. 1 (arriving at same conclusion after considering identical CBA agreement).

as to the preclusive effect of the arbitrator's decision. First, the decision in *Gilmer* involved an arbitration clause agreed to by the individual employee, not the situation presented here of an arbitration clause in a collective bargaining agreement. *See Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647. While *Gilmer* may be read to allow for the arbitration of statutory rights when negotiated by an individual employee, the recent decision in *Wright* expressly rejects the notion that *Gilmer* has overruled *Gardner–Denver* and established a presumption of arbitrability in the context of collective bargaining agreement waivers of employees' judicial forum rights.[5] *See Wright*, 119 S.Ct. at 396 ("[W]hether or not *Gardner–Denver's* seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer*, *Gardner–Denver* at least stands for the proposition that the right to a judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA.")

Second, even though the ADA encourages arbitration for disability discrimination claims, it does not automatically follow that claims which are submitted to arbitration must be given preclusive effect in a judicial forum. Nothing in the ADA can be read to provide for the elimination of a judicial forum for an ADA claim, and the concerns about the "comparatively inferior" procedures of the arbitration process identified in *Gardner–Denver* are still valid, at least with respect to union waivers of an employee's statutory right to a judicial forum for employment discrimination claims.

Finally, Hamilton Standard has failed to address the third concern of the Supreme Court in *Gardner–Denver*: the subordination of an individual union member's interests to those of the union in an arbitration

proceeding under a collective bargaining agreement. "[H]armony of interest between the union and the individual employee cannot always be presumed, especially where a claim of ... discrimination is made." *Gardner–Denver*, 415 U .S. at 58 n. 19, 94 S.Ct. 1011. Whether the Union and Beason held the same interest in pursuing his disability discrimination claims in the arbitration process is unclear but, because the impact of the arbitrator's decision had a more profound impact on Beason individually and because the Union may have been concerned with the interests of its other members as well as its ongoing relationship with Hamilton Standard, it could be that the Union did not have a unity of interest with Beason in its pursuit of his grievance. Therefore, the court finds that Beason is not precluded by the arbitrator's decision from bringing his ADA claim against Hamilton Standard in federal court.

Similarly, Beason's claim under the CFEPA is not precluded by the arbitrator's decision. Not only does the court's analysis of Beason's right to bring his ADA claim have equal application to Beason's CFEPA claim, the Connecticut legislature has expressly provided that "[n]o employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under the state or federal constitution or under a state statute solely because the employee is covered by a collective bargaining agreement." Conn. Gen Stat. § 31–51bb. The Connecticut Supreme Court has interpreted § 31–51bb to "permit an employee to assert statutory rights in a court action despite a prior adverse determination of the same or similar claim in an arbitration proceeding brought pursuant to a collective bargaining agreement." *Genovese v. Gallo Wine Merchants, Inc.*, 226 Conn. 475, 628 A.2d

---

5. Hamilton Standard concedes this point in its Supplemental Memorandum of Law in Support of its Motion for Judgment on the Pleadings ("HS Supp. Mem."), but argues that the text of the CBA explicitly waives Beason's statutory rights to a judicial forum.

*See* HS Supp. Mem. at 6 & n. 3. However, the court has already determined that the CBA does not contain an explicit waiver of Beason's statutory rights to a judicial forum for his employment discrimination claims. *See, supra*, III. A.

946, 951 (1993). Moreover, the arbitrator's conclusions are limited to whether Hamilton Standard violated the ADA and do not address whether Hamilton Standard violated the CFEPA. Therefore, Beason may also pursue his disability discrimination claim under the CFEPA.[6]

## IV. CONCLUSION

Based on the pleadings and as a matter of law, Beason is not required to submit his ADA and CFEPA claims to arbitration under the CBA. In addition, Beason's ADA and CFEPA claims are not precluded by the prior ruling of the arbitrator denying the Union grievance brought on Beason's behalf. Accordingly, Hamilton Standard's motion for judgment on the pleadings [Doc. # 12] is DENIED.

---

**6.** Hamilton Standard's argument that the decision in *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 56, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), stands for the proposition that Congress has withdrawn the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration, is unavailing. As previously discussed, this court finds that Beason and Hamilton Standard have not agreed to arbitrate his ADA or CFEPA claims and the CBA cannot be read to provide for mandatory arbitration of Beason's employment discrimination claims. Therefore, there can be no preclusive effect of the arbitrator's decision and Beason is free to pursue his CFEPA claims in a judicial forum under Conn. Gen.Stat. § 31–51bb.