**Charles A. BRATTEN, Plaintiff–
Appellant,**

v.

**SSI SERVICES, INC.; ACS, Inc.,
Defendants–Appellees.**

No. 97–6159.

United States Court of Appeals,
Sixth Circuit.

Argued April 27, 1999.

Decided July 23, 1999.

D. Russell Thomas (briefed), Herbert M. Schaltegger (argued and briefed), Thomas, Henderson & Pate, Murfreesboro, TN, for Charles A. Bratten.

William C. Rieder (argued and briefed), Haynes, Hull, Rieder & Ewell, Tullahoma, TN, for SSI Services, Inc.

Matthew C. Lonergan (briefed), Patricia H. Moskal (argued and briefed), Boult, Cummings, Conners & Berry, Nashville, TN, for ACS, Inc.

Before: JONES, NELSON, and NORRIS, Circuit Judges.

JONES, Circuit Judge.

Plaintiff–Appellant Charles A. Bratten appeals the district court's grant of summary judgment to defendants-appellees SSI Services, Inc. and ACS, Inc. (collectively "defendants" unless otherwise indicated) in Bratten's employment discrimination lawsuit brought pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Although we find some of Bratten's arguments to be meritorious, we nevertheless believe that based on the facts of this case, the district court was ultimately correct in granting judgment to the defendants. Accordingly, we affirm.

## I. Background

The parties agreed to most of the relevant facts in this case. SSI Services formerly contracted with the United States Air Force to provide mission support services at an engineering facility in Tullahoma, Tennessee. For several years while SSI Services was the contractor at the facility, it employed Bratten as an automotive mechanic. During this time, SSI Services entered into a collective bargaining agreement ("CBA") with the Air Engineering Metal Trades Council and Affiliated Union, AFL/CIO (the "Union"). Bratten's job classification as an automotive mechanic was a bargaining unit position subject to all terms and conditions of the CBA between SSI Services and the Union. ACS took over as contractor of the facility on October 1, 1995, and, at that time, assumed SSI Services's obligations under the CBA. ACS and SSI Services are separate entities, and, in fact, are competitors.

The CBA contained several provisions pertinent to this case. One such provision was Article II, Section 5, which is one of the CBA's non-discrimination clauses. The section provided as follows:

> The Company and the Union agree to provide equal employment opportunity and affirmative action. The Company and the Union will comply with Executive Order 11246 and Title VII of the

Civil Rights Act and will not discriminate against any employee or applicant for employment because of race, color, religion, national origin, sex, age, veterans status, *or presence of a disability or handicap in connection with employment*, demotion, upgrading, promotion or *transfer*; recruitment or recruitment advertising; rates of pay or other forms of compensation; selection for training including apprenticeship; and layoff or termination.

J.A. at 255 (emphasis added). The CBA further provided that any complaints under the agreement were to be resolved through a grievance and arbitration procedure set forth in the agreement. The decision of the arbitrator was to be final and binding upon the parties.

Additionally, the CBA contains guidelines with respect to the filling of new jobs and vacancies. Article XIII, Section 11 lists procedures for "Job Posting," which provides in part:

> In the event of a new job, or a vacancy to be filled, the Company shall post on the bulletin boards a description of the job or vacancy, its location and rate of pay, and shall provide job bid forms for employees to write thereon their name and badge number for submittal [sic] to the Company. Consideration will be given [sic] any permanent employee who bids on the new job or vacancy within a period of five (5) working days from the date of the initial posting.
>
> .     .     .     .     .
>
> Employees temporarily absent or in layoff status may arrange with their Chief Steward to file a job bid form in their behalf.

J.A. at 284. Finally, Article XIII, Section 12 sets forth the process for "Filling of Vacancies," which reads in pertinent part:

> Filling of vacancies and promotions within the Bargaining Unit shall be made on the basis of qualifications to perform the work and seniority. If qualifications to perform the work of the job classification are considered equal, the senior employee shall be given preference. Should the Union disagree with the Company's selection of the employee under this section of the Contract to the extent the matter is processed to arbitration, the burden of proof will rest with the Company.

J.A. at 285.

The parties agree that the position of automotive mechanic requires the constant use of hand tools and power tools, and involves hand-intensive work on a repetitive basis. Many tasks performed by an automotive mechanic call for the use of hands and arms above the shoulder level, extension of the arms, and pushing, pulling, and manipulating heavy objects. J.A. at 305–06.

Sometime in 1992, Bratten sustained an injury in the course of his employment with SSI Services. Bratten eventually had to have surgery as a result of this injury, which left him with permanent limited use of his back, arms, and shoulders. Bratten subsequently filed a worker's compensation claim in state court. Although SSI Services initially contested the claim, the parties were able to reach a settlement. After an extended period of convalescence, Bratten returned to work at SSI Services in early 1993.

Upon his return to work, Bratten experienced difficulty performing portions of his job. He often requested assistance in completing the tasks he was assigned, particularly those requiring lifting or reaching overhead. Some examples of tasks that Bratten could not do without assistance included draining oil from a vehicle, replacing a starter, replacing a strut bushing, operating a wrecker, installing tires, removing a spark plug, installing a radiator, replacing a hydraulic hose, and washing a vehicle. Again, there is no dispute that these tasks are considered routine for an automotive mechanic.

Bratten admitted that he could not perform up to 20% of the duties of an automo-

tive mechanic because his disability restricted him from doing overhead work. Apparently, while the parties still believed Bratten's disability to be temporary (roughly a six-month period), Bratten would request a co-worker to come over to Bratten's work station and perform overhead work for him on an *ad hoc* basis. Bratten reports that he often reciprocated the "favors" when his co-workers needed assistance at their own work stations.

On August 25, 1993, Bratten advised his supervisor at SSI Services, Harry Limbaugh, that he could not perform certain duties assigned to him. At that point in time, Bratten gave Limbaugh a letter from his physician, Dr. Richard Fishbein, which placed restrictions on his physical activities. The restrictions included:

(a) avoiding any hand-intensive work, especially on a repetitive basis;

(b) avoiding pushing, pulling or manipulating heavy objects;

(c) performing light to sedentary types of work only;

(d) lifting amounts limited to no greater than five pounds occasionally and ten pounds maximally.

J.A. at 238–39. On August 31, 1993, SSI Services sent Bratten home, pending clarification of Bratten's medical restrictions from Dr. Fishbein. The next day, Dr. Fishbein wrote a terse letter stating only that the restrictions "refer[red] to overhead lifting." J.A. at 240.

After SSI Services received Dr. Fishbein's second letter, it placed Bratten on medical leave. An independent doctor provided by SSI Services conducted another medical examination of Bratten, and concurred with the restrictions set forth in Dr. Fishbein's August 25th letter. In November 1993, when it became clear that Bratten's physical condition would not improve, the SSI Services Human Resources Department posted an opening for an automotive mechanic to replace Bratten. That position was filled by promoting another employee into it in January 1994.

Seeking to keep his job, Bratten processed a complaint through the grievance procedures of the CBA. However, the Union decided not to pursue the claim, apparently because the Union representative believed that ADA disputes were better resolved in federal courts than through the arbitration process. J.A. at 182–83, 395. Bratten did not take his grievance to an arbitrator, even though he had the right to do so under the CBA. Instead, on January 26, 1995, Bratten filed a complaint against SSI Services in the district court alleging employment discrimination under the ADA. After ACS took over SSI Services' position at the Tullahoma facility, Bratten amended his complaint to add ACS as a defendant. On August 6, 1997, the district court granted the defendants' motions for summary judgment, thereby terminating the case.

All briefs in this case were originally filed by January 28, 1998. On August 14, 1998, this court granted Bratten's motion to hold this appeal in abeyance pending the Supreme Court's disposition of *Wright v. Maritime Serv. Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998). After *Wright* was decided, this appeal was rescheduled.

## II. Summary Judgment Standard

We review a district court's grant of summary judgment de novo. See *Terry Barr Sales Agency, Inc. v. All–Lock Co. Inc.*, 96 F.3d 174, 178 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c); *accord Terry Barr*, 96 F.3d at 178. We view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *See, e.g. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When

confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III. Effect of Arbitration Clause on Jurisdiction

■ One of several bases upon which the district court relied in granting summary judgment to the defendants was the provision in the CBA requiring arbitration of disputes. The district court reasoned that because the CBA was binding on the parties and called for the arbitration of all disputes between defendants and the covered employees, the arbitration clause deprived the court of jurisdiction to hear the merits of Bratten's lawsuit. For this proposition, the district court relied primarily on *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 880–85 (4th Cir. 1996), in which a divided Fourth Circuit determined that a union could effectively waive its members' right to chose a judicial forum for a statutory claim.

The district court erred in concluding that it was without jurisdiction to hear Bratten's claims. Shortly before all briefs in this appeal were filed, we handed down our decision in *Penny v. United Parcel Serv.*, 128 F.3d 408 (6th Cir.1997), in which we joined the "overwhelming majority of the courts of appeal [which] have determined that employees covered by CBAs containing mandatory arbitration clauses retain the right to pursue statutory employment discrimination claims in federal court[.]" *Blakely v. USAirways, Inc.*, 23 F.Supp.2d 560, 574 (W.D.Pa.1998) (collecting cases). In *Penny*, we explicitly reject-

ed *Austin*, and held that "an employee whose only obligation to arbitrate is contained in a collective bargaining agreement retains the right to obtain a judicial determination of his rights under a statute such as the ADA." *Penny*, 128 F.3d at 414. *Penny* fully set forth the oft-repeated reasons why *Austin*'s analysis was unsound (*id.* at 411–14), and we will not again do so here.[1]

Even if we had not already decided *Penny*, we would reach the same conclusion because the Supreme Court's recent decision in *Wright* implicitly overruled *Austin* anyway. See *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 9 (1st Cir.1999) (same argument that prevailed in *Austin* was "definitively rejected" by *Wright*). Although the parties in this case have not briefed the effect of *Wright* on this case, they did address *Wright* at oral argument.

In *Wright*, the Court held that a longshoreman was not barred from suing his employer under the ADA despite a general arbitration clause in the collective bargaining agreement negotiated between his employer and his union. The agreement in *Wright* provided that "[m]atters under dispute which cannot be promptly settled between the Local and an individual Employer shall, no later than 48 hours after such discussion, be referred in writing covering the entire grievance to a Port Grievance Committee[.]" *Wright*, 525 U.S. at ——, 119 S.Ct. at 393. Additionally, the agreement stated that "[i]t is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law." *Id.*

The Court held that the usual presumption of arbitrability in this context "does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than

---

1. To the extent that other district courts in our circuit have followed *Austin* in concluding that the union had effectively waived the plaintiff's right to a judicial forum to vindicate statutory rights, *see Brummett v. Copaz*

*Packing Corp.*, 954 F.Supp. 160, 162–63 (S.D.Ohio 1996); *Jessie v. Carter Health Care Ctr., Inc.*, 930 F.Supp. 1174, 1176–77 (E.D.Ky.1996), those decisions are overruled.

courts *to interpret the terms of a CBA."* *Id.* at ——, 119 S.Ct. at 395 (emphasis in original). Accordingly, the Court held that workers' statutory claims for employment discrimination are "not subject to a presumption of arbitrability." *Id.* at ——, 119 S.Ct. at 396. Instead, the Court determined that if a union were to waive members' statutory rights at all, then at the very least, the waiver must be "clear and unmistakable." *Id.* (quotations and citation omitted). It bears emphasis that the Court explicitly declined to address the issue as to whether such a "clear and unmistakable" waiver of an employee's statutory rights could even be enforceable. *Id.* at ——, 119 S.Ct. at 397.

Based on the facts presented in *Wright,* the Court held that the collective bargaining agreement did not contain a "clear and unmistakable" waiver of plaintiff's federal forum rights because: (1) the clause providing for arbitration of "[m]atters under dispute" was too general and "could be understood to mean matters in dispute under the contract [as opposed to substantive statutory rights];" (2) the agreement contained "no explicit incorporation of statutory antidiscrimination requirements;" and (3) compliance with the ADA was not an express contractual commitment. *Id.* at ——, 119 S.Ct. at 396–97. For these reasons, a unanimous Court determined that the arbitration clause in *Wright* did not preclude the plaintiff from pursuing redress in federal court.

Were we to assume *arguendo* that a "clear and unmistakable" waiver of the covered employees' rights to a judicial forum to litigate federal statutory claims could be enforceable, we are convinced that the CBA here would fail to reach this demanding standard for at least two reasons. First, as was also the case in *Wright,* compliance with the ADA is not an express contractual commitment in the CBA. At best, Article II, Section 5 obligates defendants to refrain from disability discrimination-but only within the context of Title VII of the Civil Rights Act of 1964.

Although there are some commonalities between conduct prohibited by the ADA and that prohibited by Title VII, the statutes are far from identical. *Compare* 42 U.S.C. § 12112(b) (outlining discriminatory practices prohibited by ADA) *with* 42 U.S.C. § 2000e–2 (listing discriminatory practices prohibited by Title VII). Moreover, post-*Wright* courts appear to be in agreement that a statute must specifically be mentioned in a CBA for it to even approach *Wright's* "clear and unmistakable" standard. *See, e.g., Quint,* 172 F.3d at 9 (agreement did not explicitly mention ADA or other federal anti-discrimination statutes); *Giles v. City of New York,* 41 F.Supp.2d 308, 311–12 (S.D.N.Y.1999) ("list of covered grievances did not clearly include [Fair Labor Standards Act claims] or other statutory claims"); *Beason v. United Techs. Corp.,* 37 F.Supp.2d 127, 130 (D.Conn.1999) (agreement did specifically refer to federal or state anti-disability discrimination statutes). Defendants assert that Article II, Section 5 of the CBA was amended to include a prohibition against disability discrimination in 1992 in response to the passage of the ADA. That could very well be true, but under a "clear and unmistakable" standard, the ADA and other statutory claims must be expressly recounted in the CBA.

Second, Article II, Section 5–which is the only plausible section where a waiver of statutory claims can be found in the CBA-is a wholly separate provision from the grievance resolution procedure set forth in Article III. Indeed, Article III does not mention statutory claims, but only states in boilerplate fashion that "[a]ny grievance arising under the terms of this contract or an alleged violation thereof shall be handled in the following manner[.]" J.A. at 256. As was the case in *Wright,* this arbitration clause is "very general" and "could be understood to mean matters in dispute under the contract." *Wright,* 525 U.S. at ——, 119 S.Ct. at 396. Simply put, including a provision in a collective bargaining agreement that

prevents discrimination against employees under a federal statute "is not the same as requiring union members to *arbitrate* such statutory claims." *Beason,* 37 F.Supp.2d at 131 (emphasis in original).

For the above reasons, we are convinced that the CBA did not divest the district court of jurisdiction to hear Bratten's lawsuit, and the district court erred in concluding otherwise.

## IV. Merits of the ADA Claim

### A. Job Restructuring

■ The ADA prohibits employers from discriminating against qualified individuals with disabilities in regard to hiring, advancement, discharge, or other terms, conditions, or privileges of employment. 42 U.S.C. § 12112(a). In order to make out a *prima facie* case of employment discrimination on the basis of a disability, a claimant must establish that: (1) he is an individual with a disability; (2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) he was discharged because of his disability. *See id.* An "otherwise qualified" individual is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Brickers v. Cleveland Bd. of Ed.,* 145 F.3d 846, 849 (6th Cir.1998); 42 U.S.C. § 12111(8).

Although the parties do not dispute that Bratten has a disability within the meaning of the ADA, and that he possesses years of experience as an automotive mechanic, the district court found that Bratten was not an "otherwise qualified" individual with a disability because he could not perform the essential functions of an automotive mechanic with or without a reasonable accommodation. The district court noted that Bratten's own physician

placed significant limits on the tasks he could perform, and that Bratten has not alleged that special tools or similar accommodations could enable him to perform the essential functions of an automotive mechanic. On appeal, Bratten contends that defendants could have reasonably accommodated his disability by restructuring his job duties and continuing the practice of letting other employees perform the more physical tasks of an automotive mechanic for Bratten on an *ad hoc* basis.

■ Bratten is correct that the ADA requires "job restructuring" as a "reasonable accommodation" in appropriate circumstances. See 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2)(ii). However, Bratten overlooks that "job restructuring" within the meaning of the ADA only pertains to the restructuring of non-essential duties or marginal functions of a job. *See Benson v. Northwest Airlines, Inc.,* 62 F.3d 1108, 1112–13 (8th Cir.1995); *Henchey v. Town of North Greenbush,* 831 F.Supp. 960, 967 (N.D.N.Y.1993) (" 'job restructuring' may include the shifting of non essential duties to other employees").

■ As mentioned *supra,* Bratten does not quarrel with the contention that the overhead lifting and like tasks constitute "essential functions" of an automotive mechanic. The only possible accommodation he identifies is allowing co-workers to perform as much as 20% of the essential automotive mechanic duties for Bratten when he needs such assistance.[2] Courts have continuously found that employers are not required to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability. See *Cochrum v. Old Ben Coal Co.,* 102 F.3d 908, 913 (7th Cir.1996) (having a helper

---

**2.** SSI Services contends that the actual percentage of automotive mechanic tasks that Bratten could not perform was closer to 40–50% because Bratten was hindered in his ability to work underneath vehicles as well.

We are not concerned with the quantity of the tasks at issue, but rather whether the duties constitute "essential functions" of the position.

perform "most if not all" of roof bolter tasks were "extraordinary," not reasonable accommodations); *Benson,* 62 F.3d at 1112–13 (re-allocating essential functions of a job to other employees is not a "reasonable accommodation" within the meaning of the ADA); *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir.1991) (employee's requested accommodation of having co-workers perform essential lifting tasks of job is not "reasonable"); *Treadwell v. Alexander,* 707 F.2d 473, 478 (11th Cir. 1983).[3]

Continuing the practice of "assisting" Bratten in tasks on an *ad hoc* basis may be sound labor relations policy for defendants, as we can imagine that such circumstances could promote employee loyalty and teamwork. However, employers are not required to do so under the ADA. Therefore, the district court was correct in holding that the requested accommodation of having other workers assist Bratten was not reasonable.

### B. Job Re–Assignment

In the alternative, Bratten argues that defendants violated the ADA by failing to re-assign him to a vacant position within their organizations. For support, Bratten cites Dr. Fishbein's deposition testimony expressing the opinion that Bratten could satisfactorily perform the duties of several other jobs at the Tullahoma facility, namely line equipment operator, storekeeper, truck driver, machine tool repairmen, maintenance machinist, and associate machinist. J.A. at 361 (Fishbein Dep.). Defendants proffer three arguments as to why Bratten's re-assignment claim fails:. (1) the ADA does not recognize re-assignment as a reasonable accommodation; (2) Bratten failed to comply with the posting requirements for re-assignment as specified in the CBA; and (3) Bratten was not

otherwise qualified for any of the other positions at issue.

### 1. Re–Assignment As A Reasonable Accommodation

■ Defendants first contend that if an employee cannot be reasonably accommodated in his current position, then the employer is under no obligation under the ADA to re-assign that employee to another position in the company. The flagship for this proposition is the Fourth Circuit's decision in *Myers v. Hose,* 50 F.3d 278, 284 (4th Cir.1995).

Like *Austin, Myers* has not been well-received by other circuits. The infirmity of *Myers* was that it relied on case law interpreting the Rehabilitation Act before the statute was amended in 1992. *See Myers,* 50 F.3d at 284 (citing *Guillot v. Garrett,* 970 F.2d 1320, 1326 (4th Cir. 1992)). Prior to 1992, the Rehabilitation Act did not include re-assignment to a vacant position as a reasonable accommodation. *See Gile v. United Airlines, Inc.,* 95 F.3d 492, 497 (7th Cir.1996). After the ADA was enacted, Congress amended the Rehabilitation Act to parallel the standards for employment discrimination under the ADA. *Id.; see also* 29 U.S.C. § 794(d). Of course, the ADA explicitly lists "reassignment to a vacant position" as a possible reasonable accommodation mandated by the statute. 42 U.S.C. § 12111(9)(B).

Thus, pre–1992 Rehabilitation Act decisions such as *Guillot* holding that re-assignment is not a reasonable accommodation are no longer good law in light of 29 U.S.C. § 794(d), and *Myers* was wrong to suggest otherwise. *See Gile,* 95 F.3d at 498. Indeed, every circuit—including this one—to consider the issue has properly held that the ADA requires an employer to consider re-assignment to a vacant position if the disabled employee cannot be reason-

---

**3.** Both *Treadwell* and *Gilbert* involved "reasonable accommodations" under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* These decisions are relevant to our inquiry

because Congress gave no indication that a different standard of "job restructuring" should apply in ADA cases.

ably accommodated in his or her current job. See *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir.1998); *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir.1999) (en banc); *Feliciano v. Rhode Island*, 160 F.3d 780, 785–86 (1st Cir.1998); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284,1300–01 (D.C.Cir.1998) (en banc); *Mengine v. Runyon*, 114 F.3d 415, 418 (3d Cir.1997); *Gile*, 95 F.3d at 498–99; *Benson*, 62 F.3d at 1114–15. Additionally, we note the Fourth Circuit itself has since acknowledged its mistake, and professed that the rule set forth in *Myers*, upon which the district court relied, was "contrary to congressional direction." *Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346, 350 n. 4 (4th Cir.1996).

Although we did not specifically reject *Myers* in our decision in *Cassidy*, we do so now.[4] The ADA plainly states that re-assignment may be required to reasonably accommodate a worker with a disability. Defendants' arguments urging the contrary are unpersuasive.

### 2. Re–Assignment Based On The Facts Of This Case

As recounted *supra*, the CBA outlines procedures for filling job vacancies. In a nutshell, the defendants were required to "post" vacancies on a bulletin board. Employees, in turn, were to "bid" on these vacancies, and positions would be filled on the basis of the applicants' qualifications to perform the work and their respective seniority rights as set forth in the CBA. The district court found that all of the positions to which Bratten sought re-assignment had been posted on the bulletin board, but that Bratten did not apply for any of them. Bratten explains that he did not apply for these positions because they were posted while he was absent from the facility recuperating from his injury, and that he was therefore unaware of the openings. Nev-

ertheless, the district court determined that "the defendants were not required to breach the collective bargaining agreement by ignoring the job posting and seniority provisions of that agreement in order to accommodate the plaintiff." J.A. at 40 (Dist.Ct.Op.). The district court reached this conclusion even though it made no finding as to whether any other workers' seniority rights would, in fact, be affected by Bratten's proposed re-assignment.

■ As a general rule, we have accepted that the ADA does not require an employer to re-assign an employee with a disability to a position if such a re-assignment would "violat[e] another employee's rights under a collective bargaining agreement." *Cassidy*, 138 F.3d at 634; *see also Lujan v. Pacific Maritime Ass'n*, 165 F.3d 738, 742 (9th Cir.1999) (collecting cases). We express no opinion as to whether the district court's application of the general rule was proper in this case, because we agree that the defendants were entitled to summary judgment on an alternative ground.

■ The district court found that although Bratten identified several possible positions to which he could be re-assigned, all of those positions required similar, if not identical, physical skills as an automotive mechanic. The district court reasoned that if Bratten was not otherwise qualified to be an automotive mechanic, then it must logically follow that he was likewise not otherwise qualified to be a light equipment operator, storekeeper, truck driver, machine tool repairman, maintenance machinist, or associate machinist. We find the district court's conclusion to be well-taken. The physical factors in the job description of an automotive mechanic are substantially similar to those of light equipment operator, storekeeper, truck driver, and maintenance machinist. *Compare* J.A. at 306 *with* J.A. at 312, 314, 316, 318. Although

4. To the extent that *Vaughan v. Harvard Indus., Inc.*, 926 F.Supp. 1340, 1348 (W.D.Tenn. 1996) followed the *Myers* rule and held that the ADA does not require re-assignment when a disabled employee cannot be reasonably accommodated in his current position, it is overruled.

physical requirements are not specified for machine tool repairman or associate machinist, those job descriptions are strikingly similar to the other positions. *See J.A.* at 323, 324. Bratten does not argue that the physical standards as articulated in these jobs are inconsistent with the essential functions of the jobs.

The sole support upon which Bratten relies to create a genuine issue of material fact as to whether he was otherwise qualified for the other positions is the deposition testimony of Dr. Fishbein. True enough, Dr. Fishbein did proffer his opinion that Bratten could perform the physical tasks as required by the other jobs. J.A. at 361. However, Dr. Fishbein failed to articulate the basis of his opinion.

As did the district court, we find it very difficult to reconcile Dr. Fishbein's latter assertion, that Bratten could perform the other jobs, with his original opinion, that Bratten could not perform the tasks of an automotive mechanic. While we must resolve all doubts in favor of Bratten, we cannot ignore the plain fact that the physical requirements for the other jobs were strikingly similar to those of an automotive mechanic. Hence, we do not believe that Dr. Fishbein's unsupported opinion was enough to sustain Bratten's burden of demonstrating that he was otherwise qualified for the other positions to which he sought re-assignment. *See Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173,1186 (6th Cir.1996) (burden on plaintiff to demonstrate he is otherwise qualified for a position); *White v. York Int'l Corp.,* 45 F.3d 357, 362 (10th Cir.1995) (affirming summary judgment to defendant when plaintiff "offered nothing beyond his own subjective opinion that he could perform various other jobs"). We thus agree that the district court's determination, that Bratten was not otherwise qualified for the other positions to which he sought re-assignment, was well-founded.

## V. Conclusion

Although the district court erred in concluding that it was without jurisdiction to hear the case, it nevertheless reached the correct result in granting summary judgment to the defendants. Because Bratten failed to meet his burden that he was otherwise qualified as an automotive mechanic or for any of the positions to which he sought reassignment, the defendants were entitled to summary judgment. Accordingly, the district court's grant of summary judgment is **AFFIRMED.**