NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0040n.06

Case No. 22-3499

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 20, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ERIC A. WOODLING, | ) | |
| Plaintiff-Appellant, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) ) | |
| GEOBUILD, LLC, | ) ) | |
| Defendant-Appellee. | ) ) | OPINION |

Before: BUSH, LARSEN, and MATHIS, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Eric Woodling's job at GeoBuild, LLC (GeoBuild) sometimes required him to carry weighty bags of concrete mix and other material for land and roadside stabilization projects. It also demanded attention to detail: he had to ensure that nails were properly grouted for installations that stabilized large amounts of soil. Otherwise, disaster could strike drivers on roads that depended on stable land. After a GeoBuild installation nearly failed during a rockslide, an internal investigation blamed the narrowly averted catastrophe on poor nail grouting, and Woodling was found to be the culprit.

His error was a terminable offense, one that GeoBuild decided was unforgivable. The company fired Woodling, and he responded with a lawsuit against his former employer for unlawful retaliation and disability discrimination. He had recently undergone back surgery, and his termination coincided in time with his attempt to return to work with a 25-pound lifting restriction.

The district court dismissed Woodling's retaliation claim under the Americans with Disabilities Act (ADA) because it was not raised in his complaint to the Equal Employment Opportunity Commission (EEOC), a prerequisite for bringing it to court. And as for his disability discrimination claim under the ADA, the district court granted summary judgment for GeoBuild, holding that there was no genuine dispute of material fact and that he was not qualified for his position even with reasonable accommodations. Simply put, his job required heavy lifting—far more than the 25-pound limit his doctor had ordered. We agree with the district court's disposition of both claims and therefore affirm.

## I.

Since 2013 Woodling had worked as a union laborer for GeoBuild helping construct land stabilization and roadside stabilization projects. Job responsibilities regularly required heavy lifting, which Woodling could no longer do by January 2019. So he went on unpaid medical leave to undergo a cervical surgery and physical therapy to treat spinal stenosis and degenerative disc syndrome.

A couple of months later, in early March, Woodling emailed Paul Hale, president of GeoBuild, to request that he approve Woodling's return to work on "light duty" with a six-month 25-pound lifting restriction. Woodling also suggested that he could serve as a supervisory laborer. But GeoBuild had never had any laborers on light duty, and supervisory laborers had to perform the same physical duties of laborers. So GeoBuild declined both of Woodling's requests. Hale told Woodling that he could not be staffed on a project given the "safety-sensitive nature of his job as a Laborer" and the company's concern that Woodling might reinjure himself. Still, GeoBuild called him into work to undergo training for a new piece of equipment that he was expected to operate when his lifting restriction was removed.

But GeoBuild's plans for Woodling soon sank by the wayside because of a disturbing new development. Around the same time that he went on leave, GeoBuild learned that one of its installations had nearly failed during a rockslide. This close call was the subject of an internal investigation, which concluded that several nails had been poorly grouted and that Woodling was the laborer who was responsible. Given the serious potential consequences of poorly-grouted nails in GeoBuild installations—travel delays, injuries, or even deaths of drivers on roads that depend on those installations to hold—GeoBuild considered Woodling's inferior work to be a terminable offense. By March 21 the findings of the internal investigation were rendered, which led to Woodling's firing the next day.

Woodling responded by filing a complaint with the EEOC. He then sued GeoBuild for disability discrimination and retaliation in violation of the ADA. GeoBuild moved to dismiss the retaliation claim and moved for summary judgment on the discrimination claim. The district court granted both motions. Woodling timely appealed.

**II.**

We first address the district court's dismissal of Woodling's retaliation claim. We review de novo the grant of a motion to dismiss. *Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). We assume the truth of all well-pleaded and plausible facts in the complaint to determine whether it states a claim. *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 543–44 (6th Cir. 2021).

The district court held that Woodling had not stated a claim of retaliation under the ADA because he did not allege facts demonstrating that he had exhausted his administrative remedies with the EEOC. *See* 42 U.S.C. §§ 12203, 12117. Such exhaustion of remedies requires that a plaintiff first file a charge with the EEOC; failure to do so "is an appropriate basis for dismissal."

*Jones v. Natural Essentials, Inc.*, 740 F. App'x. 489, 492 (6th Cir. 2018) (citing *Mayers v. Sedgwick Claims Mgmt. Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004)). The district court determined that Woodling had never brought a retaliation claim as part of the filing he made with the EEOC.

Generally, a plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *See Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000). But omission of a formal allegation in the EEOC filing is not always a fatal mistake. If GeoBuild's potential liability for retaliation could "reasonably be expected to grow out of the EEOC charge," then the district court erred by dismissing on this basis. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (quoting *Albeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998)). Put differently, if Woodling included some statement or reference in his EEOC filing that would have prompted the EEOC to investigate his uncharged retaliation claim, then he was not precluded from suing GeoBuild for retaliation. *See Spengler*, 615 F.3d at 490; *see also Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002).

Woodling's submission to the EEOC, however, did not even clear that low hurdle. In his EEOC filing, Woodling only reported discrimination based on disability, checking the box on the form labelled "DISABILITY" and providing the following description of that claim: "I requested a reasonable accommodation for my disability . . . I was denied a reasonable accommodation for my disability when I was terminated . . . I believe I have been discriminated against due to my disability." Woodling failed to check the box labelled "RETALIATION", and there is nothing in the description of his charge that even hinted at this claim. Given the minimal factual allegations in Woodling's EEOC charge, we agree with the district court that Woodling included nothing in that filing to bring a potential retaliation claim to the EEOC's attention. He could have amended

his EEOC charge to include his retaliation claim or additional facts that might have alerted EEOC to such a claim, but he did not. *See* 29 C.F.R. § 1601.12(b); *see also Handlon v. Rite Aid Services, LLC*, 513 F. App'x. 523, 528 (6th Cir. 2013) (affirming the district court's grant of summary judgment to the defendant on a Title VII retaliation claim because the plaintiff had not listed retaliation in her EEOC charge or amended the charge to include that claim); *Spengler*, 615 F.3d at 490 (finding enough facts alleged to put the EEOC on notice of an undisclosed retaliation claim when the plaintiff reported he was not re-hired due to an employer's "personal vendetta" after the plaintiff reported his employer's age-related bias). We therefore agree with the district court that dismissal of the retaliation claim is warranted.

## III.

Woodling also appeals the district court's grant of summary judgment for GeoBuild on the disability claim. We review de novo the grant of summary judgment. *Whitfield v. Tennessee*, 639 F.3d 253, 258 (6th Cir. 2011). A defendant is entitled to summary judgment when there is "no genuine dispute as to any material fact" and he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute of material fact only if there is sufficient evidence for a jury to reasonably resolve a material factual issue in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). At the summary judgment stage, we construe all reasonable inferences in the nonmovant's favor. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The ADA bars employers from discriminating against a "qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, Woodling must show that (1) he is actually disabled or regarded as having a disability; (2) he is otherwise qualified for the

position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) GeoBuild knew or had reason to know of his disability; and (5) the position remained open while the employer sought applicants or the individual was replaced. *See Whitfield*, 639 F.3d at 258–**5**9; 42 U.S.C. §§ 12102(1)(A), (C).

Woodling claims a disability based on his 25-pound lifting restriction. This limit, he argues, makes him "actually disabled" under 42 U.S.C. § 12102(1)(A), which is element one of his claim. We will assume he has met that element. As we explain, Woodling does not make it past element two: he lacks evidence that would allow a reasonable jury to find that he was otherwise qualified for his position with or without reasonable accommodations. We need not address elements three through five.

To be an "otherwise qualified" individual, Woodling must show that he was able to perform the essential functions of his role or the role he desired with or without reasonable accommodations. 42 U.S.C. § 12111(8). This inquiry is not intended to require employers to lower their standards. 29 C.F.R. § 1630.2(n) (2012), App. at 411. A reasonable accommodation may include "job restructuring [and] part-time or modified work schedules." 42 U.S.C. § 12111(9)(B). But it is per se unreasonable for an accommodation to eliminate an essential function of the role. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015) (en banc). And "the ADA does not require employers to accommodate individuals by shifting an essential job function onto others." *Hoskins v. Oakland Cnty Sheriff's Dep't.*, 227 F.3d 719, 729 (6th Cir. 2000). Ultimately, the burden is on the employee to propose a reasonable accommodation. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010).

Generously construed, Woodling's claim is based on the contention that his requests for "light duty" or work as a supervisory laborer were reasonable accommodations that GeoBuild

could have provided. In a case such as this, where Woodling conceivably requests an accommodation that would exempt him from performing an essential function, "[o]ne conclusion (the function is essential) leads to the other (the accommodation is not reasonable)." *E.E.O.C.*, 782 F.3d at 763; *accord Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 418 (6th Cir. 2021). So if lifting more than 25 pounds is an essential function of both the laborer and supervisory laborer positions, then Woodling's claim cannot survive summary judgment.

We consider various factors to determine whether a function is essential, such as an employer's judgment, the written job description, the amount of time spent performing a function, the consequences of not requiring someone to perform a function, and the work experience of past and current individuals in that role. 29 C.F.R. § 1630.2(n)(3) (2012). Above all, we must give some deference to the employer's judgment in determining what functions of a job are essential. 42 U.S.C. § 12111(8).

GeoBuild put forth uncontroverted evidence to show that lifting more than 25 pounds is an essential function of the laborer and supervisory laborer roles. It is undisputed that GeoBuild as an employer considers heavy lifting an essential function. In his affidavit, Hale explained that "[a]n essential function of the laborer job involves heavy lifting" because laborers are hired "to perform the hard physical labor to install [ ] massive earth retention systems." That includes "regularly lift[ing] and manipulat[ing] heavy materials," including the 94-pound bags of cement mix, none of which Woodling disputes. Another laborer confirmed that all of the laborers on his teams readily have to and are able to lift those bags while working.

And none of that heavy lifting is off limits for supervisory laborers. Indeed, supervisory laborers "perform all the manual work that a laborer performs," and as such, "the physical requirements of the job are the same." Woodling agrees: he testified that there are "not really"

any differences between the work of a laborer and a supervisory laborer other than the supervisory laborer's obligation to fill out some additional paperwork. This description of a supervisory laborer's job was confirmed by another GeoBuild employee, who reported that as a supervisory laborer he both manages the paperwork and does the job of a laborer. Both a supervisory laborer and a laborer lift items "daily," and there has never been any differential between the two jobs as to the weight of the load one must bear. In short, a laborer who cannot make the requisite lifts—including those 94-pound bags of concrete mix—does not meet the job performance requirements of either a laborer or supervisory laborer.

Staffing a laborer who could not lift was not a feasible option for GeoBuild. To remain competitive, GeoBuild makes sure every laborer can carry the requisite weight. As Hale testified, GeoBuild "cannot afford to have a non-lifting laborer or supervisory laborer on [a] job . . . in order to win bids, it must staff projects with as few laborers as it safely can, all fully engaged in heavy-lifting laboring work."

Woodling tries to dispute this evidence by arguing that he personally had not lifted 94-pound bags of cement in a couple of years, but he also testified that lifting "50 pounds" is "pretty much standard in the industry." And, of course, the 50-pound industry standard is still well above Woodling's 25-pound restriction. Perhaps for that reason, his union representative told Woodling that he had "no leg to stand on" to seek to return as a laborer with a 25-pound lifting restriction.

While Woodling correctly notes that there was no written job description until after he was fired, this fact is not dispositive, nor does it aid him. Hale testified, and that testimony is unrefuted in the record, that the physical requirements in the job description, including the ability to "lift up to 100 pounds," reflected the preexisting and unchanged physical expectations for laborers.

Even if Woodling believes he was never asked to lift 100 pounds, he has offered no evidence to rebut his own admission that 50 pounds was standard.

Finally, Woodling argues that lifting more than 25 pounds was not an essential function because a job description authorizes supervisors to assign work based on an individual's "physical condition," and David Repp, another supervisory laborer for GeoBuild, testified that he assigned older workers less strenuous jobs. But Woodling's "job description" is pulled from a safety manual that authorizes supervisors to change an individual's duties "on a particular day," say, if they were sick. Hale testified that this sentence in the safety manual did not mean that an individual who could not lift everything that other laborers had to lift could still perform the laborer role. Furthermore, Repp's testimony that "I respect my elders and I try to give them easier work," does not indicate that GeoBuild employed laborers who could not lift more than 25 pounds. Repp explained that while he believed the younger workers "are better at lifting the bags of cement," every laborer on the job could lift the 94-pound bags.

Again, the ADA does not require employers "to assign existing employees or hire new employees to perform certain functions or duties of a disabled employee's job which the employee cannot perform by virtue of his disability." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632 (6th Cir. 1999); *accord Wyatt*, 999 F.3d at 419. Because GeoBuild has established that lifting more than 25 pounds was an essential function of the laborer and supervisory laborer roles, Woodling cannot establish a prima facie case of disability discrimination and his claim must fail.[1]

## IV.

For the forgoing reasons we AFFIRM the district court's judgment.

---

[1] Because being an "otherwise qualified" individual is an element of disability discrimination for both an actual disability and an individual "regarded as" being disabled, we need not also consider Woodling's challenge to the district court's grant of summary judgment on that basis.