*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0203P (6th Cir.)
File Name: 00a0203p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CASEY A. KENNEDY,
     *Plaintiff-Appellant,*

     *v.*

SUPERIOR PRINTING
COMPANY; LOCAL 419M
GRAPHIC COMMUNICATIONS
INTERNATIONAL UNION,
     *Defendants-Appellees.*



No. 99-3304

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
Nos. 97-01833; 98-01103—James D. Thomas,
Magistrate Judge.

Argued: March 15, 2000

Decided and Filed: June 15, 2000

Before: MERRITT, DAUGHTREY, and MAGILL,[*]
Circuit Judges.

---

[*]The Honorable Frank J. Magill, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

of Kennedy to bring in further medical documentation demonstrating the need for accommodation. When those efforts failed, Superior sent Kennedy a letter indicating that it would arrange and pay for a medical exam. Superior scheduled two independent medical examinations, both of which Kennedy failed to attend. The record shows that Superior was extremely patient and did everything it could to assess the medical condition of Kennedy. Superior never indicated that it would deny Kennedy's request to work through lunch, it merely wished to assess Kennedy's medical condition. Under these facts, there is no ADA violation and Kennedy's claim must be dismissed.

### III. CONCLUSION

In sum, we affirm the judgment of the district court.

---

### COUNSEL

**ARGUED:** Wayne P. Marta, WAYNE P. MARTA CO., Cleveland, Ohio, for Appellant. W. Eric Baisden, JONES, DAY, REAVIS & POGUE, Cleveland, Ohio, Barry R. Laine, GREEN, HAINES, SGAMBATI, MURPHY & MACALA, Youngstown, Ohio, for Appellees. **ON BRIEF:** Wayne P. Marta, WAYNE P. MARTA CO., Cleveland, Ohio, for Appellant. W. Eric Baisden, JONES, DAY, REAVIS & POGUE, Cleveland, Ohio, Barry R. Laine, Dennis Haines, GREEN, HAINES, SGAMBATI, MURPHY & MACALA, Youngstown, Ohio, for Appellees.

---

### OPINION

---

MAGILL, Circuit Judge. This appeal arises out of a suit brought by Casey A. Kennedy (Kennedy) against Superior Printing Company (Superior) claiming that Superior wrongfully discharged him and also violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et. seq., by discontinuing a work accommodation that it had previously granted him and by requiring him to take a medical examination. Kennedy also brought suit against the Graphic Communications International Union, Local 419M (Union), claiming that the Union breached its duty of fair representation in connection with the Union's representation of Kennedy in arbitration proceedings against Superior. Kennedy appeals the district court's[1] grant of summary

---

[1] The Honorable James D. Thomas, United States Magistrate Judge for the Northern District of Ohio. On March 16, 1998, the case was transferred to Magistrate Thomas pursuant to the consent of the parties for all further proceedings including an entry of final judgment.

the district court. *See Dobbs-Weinstein v. Vanderbilt Univ.*, 185 F.3d 542, 545 n.2 (6th Cir. 1999).

Kennedy does not contest the proposition that the ADA permits an employer to conduct a medical examination to verify that an employee requesting an accommodation is truly disabled, but, rather, argues that there is a genuine issue of material fact as to "whether Superior truly sought to have him medically examined for the purpose of evaluating his disability." Kennedy argues that a "reasonable jury could conclude that Superior was more concerned with Mr. Kennedy's desired accommodation being an 'undue hardship' to itself rather than being a form of assistance genuinely needed by him to cope with his disability."

Kennedy has not produced any evidence showing that Superior did anything other than attempt to confirm Kennedy's disability. An "employer need not take the employee's word for it that the employee has an illness that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement. If this were not the case, every employee could claim a disability warranting special accommodation yet deny the employer the opportunity to confirm whether a need for the accommodation exists." *E.E.O.C. v. Prevo's Family Market, Inc.*, 135 F.3d 1089, 1094-95 (6th Cir. 1998). Kennedy's note from January 15, 1995, stating only that Kennedy had a "problem," was clearly insufficient to establish that Kennedy had a disability that required reasonable accommodation. Superior was entitled to require that Kennedy provide medical documentation sufficient to prove that he had a condition requiring accommodation. The ADA "permits employers . . . to make inquiries or require medical examinations necessary to the reasonable accommodation process . . . ." 29 C.F.R. pt. 1630, App. § 1630.14(c).

The record clearly shows that Superior made numerous attempts to acquire medical documentation of Kennedy's condition and that Kennedy persistently refused to cooperate. During April and May of 1996, repeated requests were made

judgment holding that his ADA claim is barred by *res judicata*. We affirm the judgment of the district court.[2]

## I. BACKGROUND

Kennedy was employed by Superior as a journeyman in its bindery and was a member of the Union. For several years, certain employees in the bindery, including Kennedy, worked through their lunch periods in order to leave work one-half hour early every day. As a result of personnel problems, the President of Superior, Jack Glinn (Glinn), replaced the bindery supervisor and, at Glinn's direction, the new supervisor informed the bindery employees that they could no longer leave work early and had to take their lunches at the scheduled time. Eventually, all employees complied except for Kennedy. On January 17, 1995, Kennedy provided a note from his physician, which read as follows: "Patient to benefit by not stopping for lunch. Appropriate treatment for this problem is to allow him to work through lunch." Although the note did not state the nature of Kennedy's "problem," Kennedy's impairment arose when his foot was injured several years earlier in an industrial accident.

Superior permitted Kennedy to continue working though his lunch period until March of 1996, when Superior determined that the fifteen-month-old physician's note was outdated and insufficient. During April and May of 1996, repeated requests were made of Kennedy to either work his regularly scheduled shift or bring in further medical documentation demonstrating the need for accommodation. Kennedy continuously refused these requests and disciplinary action was instituted. Oral warnings were given on July 1, 1996, and July 2, 1996, and a written warning was given on July 3, 1996. On July 24, 1996, Glinn sent Kennedy a letter

---

[2]Kennedy also claims that the court erred in denying his motion to strike certain exhibits introduced by Superior and by sanctioning Kennedy's counsel under Rule 11. Kennedy's claims are without merit and we affirm the district court without further comment. Superior's motion for damages, attorneys' fees and costs is also denied.

informing him that he was expected to work his regularly scheduled shift or else submit to a medical exam for which Superior would pay. In late July 1996, Glinn met with Kennedy personally to discuss his continued refusals and sent Kennedy a follow up letter indicating that he would allow Kennedy to supply the necessary medical documentation from Kennedy's own doctor.

On December 2, 1996, Superior sent Kennedy a letter informing him that an independent medical exam was scheduled for December 31, 1996, and that if Kennedy did not show up, he would be disciplined. Kennedy did not show up for this examination and, consequently, was suspended for three days. Subsequently, Superior sent Kennedy one last letter, informing him that a second examination was scheduled and that if he did not attend he would be terminated. Kennedy again failed to attend the scheduled examination and, on January 14, 1997, Kennedy was terminated from his employment with Superior.

As a member of the Union, the terms and conditions of Kennedy's employment were governed by a collective bargaining agreement (Agreement). On January 15, 1997, pursuant to the terms of the Agreement, the Union filed grievances on Kennedy's behalf. The grievances alleged wrongful discharge and violation of the ADA. Superior denied both grievances. While the grievances were proceeding in arbitration, Kennedy filed a complaint in the district court, alleging that Superior had wrongfully discharged him because of his disability and that the Union had breached its duty of fair representation. Superior filed a motion to dismiss, or, in the alternative, for summary judgment.

On February 10, 1998, before a ruling was made in the pending lawsuit, Arbitrator William J. Miller, Jr. conducted a hearing on the grievances. Arbitrator Miller concluded:

[Superior] did not violate the Agreement or existing external law when it required [Kennedy] to receive a medical examination to determine whether or not he

Agreement did not provide its own definition of prohibited discrimination based on disability or explicitly incorporate external law to define the anti-discrimination provision. Therefore, it is not at all unreasonable or surprising that Kennedy and the arbitrator would discuss the ADA in the context of arbitrating a dispute involving a claim that the company violated the anti-discrimination clause of the Agreement prohibiting disability discrimination. In fact, the arbitrator noted that "[i]t is the position of the Union that the parties incorporated external law regarding discrimination in their Agreement," which the arbitrator deemed "appropriate."

In this context, where an employee brings a wrongful discharge claim to arbitration under a collective bargaining agreement that also includes a anti-discrimination provision, the employee's allegation that the employer violated federal anti-discrimination law does not necessarily waive the employee's right to a federal judicial forum for the federal statutory rights. Absent clearer evidence that Kennedy actually waived his statutory rights to a federal forum for his ADA claim, we must find that Kennedy did not waive his right to bring his ADA claim in federal court.[4]

**B.  ADA CLAIM**

Because the court below found that Kennedy was barred from bringing his ADA claim in federal court, it declined to address the merits of the claim. However, because a grant of summary judgment is reviewed *de novo*, this court may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by

---

[4]Moreover, we note that Kennedy was represented by the union in the arbitration proceedings. In *Gilmer*, the Court noted that "because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case." 500 U.S. at 35.

49.[3] *See also Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999) (holding that an arbitration decision concerning anti-discrimination clauses in collective bargaining agreements does not bar subsequent statutory discrimination lawsuits).

In this case, there is no evidence that Kennedy waived his right to a judicial forum for his federal statutory rights rather than simply alleging that Superior violated the anti-discrimination clause of the Agreement. Although it is undisputed that Kennedy arbitrated a claim of disability discrimination and claimed that Superior violated the ADA, it is not clear that Kennedy agreed to waive his right to a federal forum for his ADA claim. Workers' statutory claims for employment discrimination are "not subject to a presumption of arbitrability." *Wright*, 524 U.S. at 79. The presumption of arbitrability of labor disputes "does not extend beyond the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts to interpret the terms of a CBA." *Id.* at 78.

The burden was on Superior to show that Kennedy waived his *statutory* rights, not merely that he arbitrated a discrimination claim under a collective bargaining agreement that also had a basis in federal law. Superior has not met this burden. There was no written agreement providing that Kennedy would submit his ADA statutory claims to binding arbitration. The only arguable evidence that Kennedy submitted his ADA claim to arbitration was his grievance in which he wrote that he was "still claiming ADA protection-breach of contract." In this case it was not clear what law the arbitrator would have to consider in order to apply the Agreement's anti-discrimination clause because the

---

[3]The *Gilmer* Court seemed to be in accord with the distinction drawn in *Gardner-Denver* between contractual and statutory rights, distinguishing *Gardner-Denver* on the basis that *Gardner-Denver* involved the arbitration of contract-based anti-discrimination claims where the employees there had not agreed to arbitrate their statutory anti-discrimination claims. *See Gilmer*, 500 U.S. at 35.

---

needed to continue working through his lunch. However, [Superior] improperly terminated [Kennedy] because [Kennedy] made himself unavailable for work when he determined that he would not submit to a medical examination to determine whether or not he was entitled to an accommodation of working through his lunch. [Superior] should immediately schedule [Kennedy] for an appropriate medical examination to determine whether or not he is entitled to an accommodation. Based upon such medical examination, [Superior] will return [Kennedy] to work with or without an accommodation related to his being able to work through his lunch, but without back pay or benefits. If [Kennedy] fails to avail himself to the medical examination which is to be scheduled by [Superior], [Superior] will have no further obligation to [Kennedy].

On April 2, 1998, Kennedy informed the court that he wished to file an ADA claim. Although Kennedy was granted leave to file a motion to amend his complaint, he instead filed a separate action alleging the ADA violation. The two cases were eventually consolidated. On January 29, 1999, summary judgment was granted to Superior on the wrongful discharge and ADA claims and to Union on the breach of the duty of fair representation claim. The district court held that Kennedy had produced no evidence showing that the Union had breached its duty of fair representation and that Kennedy voluntarily submitted and litigated the ADA claim to an arbitrator and, thus, that *res judicata* barred Kennedy's ADA claim. Subsequently, Kennedy brought the present appeal.

## II. ANALYSIS

### A. PRECLUSIVE EFFECT OF THE ARBITRATION

Kennedy argues that the district court erred in holding that his ADA claim is barred by the arbitrator's award and adjudication. Kennedy asserts that neither the Agreement nor he waived his right to a federal judicial forum for his statutory ADA rights and points to *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), as holding that the arbitration of

discrimination claims under collective bargaining agreements containing anti-discrimination provisions does not bar *de novo* review of federal statutory rights in federal court. The district court's grant of summary judgment is reviewed *de novo. See GTE North, Inc. v. Strand*, 209 F.3d 909, 915 (6th Cir. 2000).

There can be no dispute in this case that the Agreement did not compel employees to arbitrate federal statutory anti-discrimination claims and, thus, waive their rights to a federal judicial forum. In *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998), the Supreme Court held that if a union were to waive members' statutory rights at all, then at the very least, the waiver must be "clear and unmistakable." *Id.* at 80 (quotations and citation omitted). In *Bratten v. SSI Serv., Inc.*, 185 F.3d 625 (6th Cir. 1999), the Sixth Circuit held that "a statute must specifically be mentioned in a[n] [Agreement] for it to even approach *Wright*'s 'clear and unmistakable' standard." *Id.* at 631. The court held that under the "clear and unmistakable" standard, "the ADA and other statutory claims must be expressly recounted in the [Agreement]." *Id.* The court reasoned that "including a provision in a collective bargaining agreement that prevents discrimination against employees under a federal statute is not the same as requiring union members to *arbitrate* such statutory claims." *Id.* at 631-32 (emphasis in original) (citation omitted). *See also Penny v. United Parcel Serv.*, 128 F.3d 408 (6th Cir. 1997) (holding that "an employee whose only obligation to arbitrate is contained in a collective bargaining agreement retains the right to obtain a judicial determination of his rights under a statute such as the ADA").

In this case, the Agreement has only a general anti-discrimination provision that prohibits various forms of discrimination against employees, including discrimination based on disability. The Agreement defines a grievance as "any controversy or dispute arising from the interpretation and/or application of the terms and work conditions under this labor agreement" and provides that any decision by the

arbitrator "shall be binding upon the parties."    The "No Discrimination" provision states that:

> The parties to this Agreement agree to continue their policy of no discrimination against any Employee because of race, creed, color, age, disability, sex or national origin regards [sic] to employment, advancement, working conditions, rates of pay, acceptance into union membership, or selection for apprenticeship openings.

Nowhere does the Agreement reference the ADA. Therefore, under *Wright* and *Bratten* the Agreement cannot be construed as waiving Kennedy's rights to a judicial forum for his ADA claim.

Superior argues that even if the Agreement did not compel Kennedy to submit his ADA claim to arbitration, he voluntarily submitted the ADA claim to binding arbitration, and, thus, waived his right to a judicial forum. An individual is permitted to waive his rights to a federal forum for federal statutory claims. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Court permitted mandatory arbitration of statutory claims, stating that by "agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* at 26 (citation and quotation omitted). In order for such a waiver to be effective, however, it must be shown that the employee waived statutory rather than merely contractual rights. In *Gardner-Denver*, the Court said that "an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." 415 U.S. at 48. The reason for this is that "[i]n submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress." *Id.* at