**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0057n.06**
**Filed: January 20, 2006**

**No. 04-4160**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **PATRICIA HILL**, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T  F O R  T H E |
| **v.** | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| **FORUM HEALTH, SONYA CLAWSON-GREGG** | ) | |
| **and ELIZABETH MAIORANA**, | ) | **O P I N I O N** |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE:** **MOORE, ROGERS and McKEAGUE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** In this action, appellant, who is African-American and a

long-time employee of the appellee employer, alleges that she was denied the opportunity, due to

discriminatory animus, to compete for promotion to a position for which she was better qualified

than the Caucasian employee who was promoted. The employer defended its actions by explaining

that the subject appointment arose from a reorganization, that the appointment did not involve a

vacant position that needed to be posted for promotion or hiring, and that the employee appointed

had already been performing the duties of the position for several months under a different title. The

district court concluded appellant had failed to show that the employer's legitimate

nondiscriminatory reason was a pretext for discrimination and awarded summary judgment to the

employer. On appeal, appellant has failed to identify any error in the district court's analysis and we therefore affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Patricia Hill was hired by the Youngstown Hospital Association, a hospital in Youngstown, Ohio now known as Western Reserve Care System ("WRCS"), as a practical nurse in 1968. Defendant Forum Health is the parent corporation of WRCS.[1] Upon obtaining her Associate's Degree in Nursing at Youngstown State University, plaintiff Hill was hired by WRCS as a registered nurse in 1974. From 1970 to 1983, Hill worked in the hospital's Coronary Intensive Care Unit. From 1983 to 1994, she worked in the WRCS Department of Internal Medicine as a clinical assistant. Beginning in 1994, she assisted Jeffrey Rubin, M.D., in opening and operating the Peripheral Vascular Diagnostic Center ("PVDC"), a department at WRCS. In April 1998, she was designated Technical Director of the PVDC. It was in this capacity that Hill continued to work until her employment was terminated on October 25, 2002, purportedly for performance deficiencies.

The difficulties that eventually led to plaintiff's termination after some 34 years of employment appear to have been precipitated by the "promotion" of one of plaintiff Hill's colleagues, defendant Sonya Clawson-Gregg. Effective April 1, 2001, Clawson-Gregg was given the title, or appointed to the newly created position, "Corporate Director of Non-Invasive Cardiology Services." The appointment was prompted by the recommendation of defendant Elizabeth

---

[1]For purposes of this appeal, however, both Forum Health and WRCS have been treated as one and the same entity, *i.e.*, as plaintiff's employer.

Maiorana, who was Cardiovascular Administrator for both WRCS and Trumbull Memorial Hospital ("Trumbull"), another hospital in Youngstown managed by Forum Health. As Corporate Director, Clawson-Gregg was given responsibility for supervision of the PVDC, among other departments. Upon learning of Clawson-Gregg's appointment, Hill voiced objection. She believed that she was better qualified for the position than Clawson-Gregg. She resented the fact that the position was not posted and that she was afforded no opportunity to compete for it. Hill, who is African-American, attributed the preferential treatment received by Clawson-Gregg to racial favoritism. Following Clawson-Gregg's appointment, Hill's employment relationship with Forum Health gradually deteriorated until she was discharged on October 25, 2002.

In this action, plaintiff alleges that Forum Health's failure to promote her was the product of race discrimination and violative of her civil rights under both federal law (Title VII, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981) and state law (Ohio Revised Code § 4112.02). Plaintiff's first amended complaint also contains allegations that she was subjected to a racially hostile work environment and was ultimately discharged because of her race. On August 18, 2004, the district court awarded summary judgment to defendants on all three theories. On appeal, Hill asserts no claim of error with respect to the district court's ruling on her hostile work environment claim.

In connection with the discriminatory discharge theory, Hill contends only that the district court erred by failing to evaluate the claim as a retaliatory discharge claim. The district court expressly refused to recognize a retaliation claim because it correctly found that plaintiff had failed to allege such a claim in her complaint. In challenging this conclusion, appellant Hill does not even argue that her complaint should be liberally construed as stating a retaliation claim. It plainly does

not.  Rather, plaintiff contends she asserted a retaliation claim in her opposition to defendants' motion for summary judgment.

Granted, a claim that was not formally pleaded but was otherwise fairly presented to and addressed by the district court *may* be preserved for review on appeal.  *See Strouss v. Michigan Dep't of Corrections*, 250 F.3d 336, 345 (6th Cir. 2001).  Here, however, no retaliation claim was ever presented to the district court.  Plaintiff's isolated references to "retaliation" in her brief opposing defendants' motion for summary judgment in no way represent an attempt to state a distinct retaliation *claim*.  Rather, the term "retaliation" was used only in support of her other actually pleaded claims, as plaintiff argued that the proffered reasons for defendants' adverse actions were pretextual and that their actions were actually motivated by discriminatory animus.  A separate and distinct retaliation claim was never asserted against defendants and never fairly presented to the district court.  Here, as in *Yatvin v. Madison Metropolitan School Dist.*, 840 F.2d 412, 420-21 (7th Cir. 1988), the case distinguished by *Strouss*,  plaintiff clearly failed to tell the district court she was making a retaliation claim.  The district court did not err, therefore, in failing to recognize such a claim.

Further, plaintiff's attempt to raise the claim for the first time on appeal comes too late.  It is well-settled that this court will not consider arguments raised for the first time on appeal unless necessary to avoid a miscarriage of justice.  *Barner v. Pilkington North America, Inc.*, 399 F.3d 745, 749 (6th Cir. 2005) ("Our function is to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order."); *Lepard v. NBD Bank*, 384 F.3d 232, 236 (6th Cir. 2004).  Plaintiff has offered no explanation for her failure to timely assert a

retaliation claim below and we remain unpersuaded that a miscarriage of justice will result if the claim is not addressed in this appeal.

Accordingly, this appeal focuses on the district court's evaluation of plaintiff's failure to promote claim. In this regard, the district court determined that plaintiff Hill had established a *prima facie* case of discrimination; that defendants had presented a legitimate nondiscriminatory reason for their actions; and that plaintiff had failed to adduce evidence upon which a reasonable jury could find that defendants' reason was pretextual. The district court awarded summary judgment to defendants. On appeal, Hill contends that the district court failed to evaluate the record in the light most favorable to her, and that the judgment should therefore be vacated and the case remanded for trial.

## II.  ANALYSIS

### A.  Governing Legal Standards

The court of appeals reviews *de novo* an order granting summary judgment. *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Id*. Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* issue of *material* fact. *Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2005). A dispute is "genuine" only if based on evidence upon

which a reasonable jury could return a verdict in favor of the non-moving party. *Hedrick v. W.*

*Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). A factual dispute concerns a "material" fact

only if its resolution might affect the outcome of the suit under the governing substantive law. *Id.*

In summarizing the governing substantive law, the district court correctly observed that

plaintiff's failure to promote claims, under Title VII, 42 U.S.C. § 1981, and Ohio law, are all

evaluated under the same standards, those applicable to Title VII claims. *See Dews v. A.B. Dick Co.*,

231 F.3d 1016, 1021 n.2 (6th Cir. 2000). Because plaintiff presented no direct evidence of

discrimination, her circumstantial evidence was evaluated by the district court under the familiar

burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04

(1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253-06 (1981), concisely

summarized as follows:

> To establish a *prima facie* claim of racial discrimination based on a failure
> to promote under Title VII of the Civil Rights Act of 1964, a plaintiff generally must
> demonstrate that: (1) he is a member of a protected class; (2) he applied and was
> qualified for a promotion; (3) he was considered for and denied the promotion; and
> (4) other employees of similar qualifications who were not members of the protected
> class received promotions. After a plaintiff creates a presumption of discrimination
> by establishing a *prima facie* case, a defendant may rebut the presumption by
> proffering a legitimate, nondiscriminatory reason for its decision. The plaintiff then
> bears the burden of showing that the defendant's proffered reason is pretextual.
>
> A plaintiff can demonstrate pretext by showing that the proffered reason (1)
> has no basis in fact, (2) did not actually motivate the defendant's challenged conduct,
> or (3) was insufficient to warrant the challenged conduct. If a plaintiff can show that
> the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact
> may infer discrimination. Nevertheless, the ultimate burden of proof to show
> discrimination remains on the plaintiff at all times.

*Dews*, 231 F.3d at 1020-21 (footnote, citations omitted).

**B. Plaintiff's *Prima Facie* Case**

The district court noted that the circumstances of this case do not fit neatly within the standard elements of a *prima facie* failure to promote case. Specifically, the court observed that although plaintiff is clearly a member of a protected class, there was little or no evidence that she applied for, was qualified for, or was considered for the position to which Sonya Clawson-Gregg was appointed. The court cited *Dews*, however, in concluding that because Forum Health had not given employees notice and a formal mechanism for expressing interest in the available promotion, it had "a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known." *Id.* at 1022. For purposes of evaluating plaintiff's *prima facie* case, the district court rejected defendants' argument that Clawson-Gregg's appointment as Corporate Director of Non-Invasive Cardiology Services was not a promotion, but simply a job title change to reflect the duties she was actually performing. With the new job title, the court observed, Clawson-Gregg also received a raise, rendering the new position sufficiently analogous to a promotion that Forum Health ought to have given potentially interested employees an opportunity to apply. Because Forum Health had not given plaintiff this opportunity, the district court concluded, consistent with *Dews*, that plaintiff did not have to meet the "applied for" and "considered for" elements to make out a *prima facie* case.

The court also recognized that plaintiff Hill did not meet all requirements of the Corporate Director job description. She had not earned a Bachelor's Degree and had had no prior job responsibilities at Trumbull Memorial Hospital. In contrast, Clawson-Gregg did have prior

experience at Trumbull. Yet, she was appointed even though she, too, lacked a Bachelor's Degree.[2]

Hence, the court surmised that the job qualifications were not so rigidly enforced as to necessarily

exclude Hill from eligibility. In view of other evidence of Hill's prior experience and qualifications,

the court concluded that there was at least a question of fact as to whether Hill was qualified for the

position .

Finally, the court noted, in connection with the fourth element of the *prima facie* case, that

there was some question as to whether Clawson-Gregg is Native-American and is therefore also a

member of a protected class. On this point, too, the court concluded there was at least a question

of fact concerning Clawson-Gregg's racial or ethnic background. This discrepancy is immaterial.

Whether Clawson-Gregg is Caucasian or of Native-American descent, the fact remains she is not

a member of the same protected class as Hill. In other words, the fact that Clawson-Gregg is

undisputedly not African-American is a factor contributing to an inference of discriminatory motive.

Based on the foregoing analysis, the district court concluded that plaintiff had presented

sufficient evidence in support of a *prima facie* case of race discrimination. Meeting the elements

of a *prima facie* case was deemed to create a rebuttable presumption that the employer unlawfully

discriminated against the employee. Appellant Hill has not, of course, challenged the district court's

finding that she made out a *prima facie* case. Nor have defendants challenged the determination.

Therefore, we need not pass on the correctness of the district court's opinion in this regard. We

note, however, that for the reasons stated by the district court, Hill's *prima facie* showing of

---

[2]It appears that Clawson-Gregg was in an educational program to complete her Bachelor's Degree when she was appointed and earned the degree shortly after her appointment.

discrimination is, under any construction, a weak one.  The district court recognized that plaintiff had adduced evidence in support of only two or three of the normally required four elements – evidence deemed sufficient to create a genuine issue of material fact.  The weakness of the discrimination presumption arising from such a weak *prima facie* showing is relevant, as seen below, in evaluating plaintiff's showing that Forum Health's legitimate nondiscriminatory reason for its actions was pretextual.

### C.  Legitimate Nondiscriminatory Reason

To rebut plaintiff's *prima facie* case, defendants were obliged to produce evidence of a legitimate nondiscriminatory reason for the decision to appoint Clawson-Gregg and not Hill to the Corporate Director position.  The district court determined that defendants satisfied their burden of production in this regard.

Defendants' explanation rested largely on the testimony of Cardiovascular Administrator Elizabeth Maiorana.  She explained that Forum Health began restructuring the management of the Cardiovascular Department at both WRCS and Trumbull in 1998 or 1999.  As a consequence, the Director of Cardiology position, occupied by Cathy Valinsky, was to be supplanted by two new positions, Manager of Invasive Cardiology Services and Manager of Non-Invasive Cardiology Services, to enhance accountability for operations in both departments.  Initially, Valinsky became the Manager of Non-Invasive Cardiology Services and, while a Manager of Invasive Cardiology Services was being recruited, she handled those responsibilities as well.

When Valinsky died suddenly in the Summer of 1999, Clinical Nurse Manager Myrna Ruggles assumed responsibility in the interim for managing both invasive and non-invasive services.

Both positions were posted and both internal and outside candidates were considered. Patricia Hill did not apply for either position. Ruggles ended up accepting the Manager of Invasive Cardiology Services position. Meanwhile, Clawson-Gregg had been hired as a Lead Echo Sonographer in September 1999. She demonstrated managerial skills and began assisting Ruggles with her duties. Clawson-Gregg applied for the Manager of Non-Invasive Cardiology Services position at WRCS and it was awarded to her in June 2000.

Early in 2001, Kevin Walro, Manager of Non-Invasive Cardiology Services at Trumbull, announced his resignation. He had been performing essentially the same duties at Trumbull that Clawson-Gregg had been performing at WRCS. Clawson-Gregg then began to assist with management of non-invasive services at Trumbull as well as WRCS. In the Summer of 2001, Maiorana recommended to the Forum Health Human Resources Department that Clawson-Gregg's job description be expanded to reflect the increased duties she had assumed. This recommendation led that Summer to a change in Clawson-Gregg's title to Corporate Director of Non-Invasive Cardiovascular Services, a title that had not previously existed, a title that reflected her responsibilities for management of "Echocardiography, EKG, Pacer Clinic, Stress Testing, and Vascular at the Trumbull Campus and Cardiac Rehab, Echocardiography, EKG, Stress Testing, Nuclear Cardiology and the Peripheral Vascular Diagnostic Center at the Northside [WRCS] campus." Maiorana memo. 8/23/01, J.A. 378.

Thus, Forum Health explained that there had not been an open Corporate Director position for which qualified candidates were recruited for promotion or hire. Rather, Sonya Clawson-Gregg was – in the midst of this restructuring process, complicated by vacancies due to a death and a

resignation – present, willing and able to help as needed.  She had voluntarily assumed extra duties to meet the needs presented, had demonstrated competence in handling those responsibilities, and had been rewarded with a new title and raise commensurate with her expanded responsibilities.

Maiorana explained that where, as in this case, the Corporate Director title was essentially created by Human Resources to match the responsibilities actually being performed by an employee who had originally been hired in a different capacity, there was no requirement for posting a position vacancy and receiving applications.  This understanding was corroborated by the testimony of Chief Operating Officer Michael Cicchillo.  There was no vacancy to fill through promotion or hiring; Clawson-Gregg was already doing the job.  Therefore, she was granted the "appointment." Maiorana cited the example of another Forum Health employee, David Hollis, who had months earlier, pursuant to similar restructuring, been given the newly created title Corporate Director of Respiratory Services at both WRCS and Trumbull, without any posting of the position.  Thus, defendants maintain, race discrimination played no role in the process whereby plaintiff Hill and other potentially interested employees were not afforded the opportunity to apply for the Corporate Director appointment.

Appellant Hill does not challenge the district court's determination that defendants' explanation  represents a legitimate nondiscriminatory reason for their actions.  Still, she insists it is a pretext for race discrimination.

### D.  Pretext

To bear her burden of showing pretext, Hill was required to adduce evidence upon which a reasonable trier of fact could find either (1) that there was no factual basis for defendants' proffered

reason for their actions, or (2) that their proffered reason did not actually motivate their actions, or (3) that their proffered reason was not sufficient to justify their actions. Hill appears to be relying on the second or third of these three ways. She identifies six circumstances as creating a triable fact issue on the question of pretext.

First, Hill contends that she was better qualified than Clawson-Gregg for the Corporate Director position, considering her greater experience and education. She cites the deposition testimony of Chief Operating Officer Michael Cicchillo to the effect that *if*, hypothetically, there had been a vacancy and if the position had been posted, Hill would not have been disqualified from applying and "could have been on the job." Cicchillo dep. pp. 85-86, J.A. 540-41. The significance of this testimony is undercut by the fact that, as Cicchillo recognized, there was no vacancy.[3] Hill did not have a chance to compete with Clawson-Gregg for the position because, under the circumstances described above, Clawson-Gregg was already performing the duties entailed in the Corporate Director position before the position existed as such. Thus, even though Hill was *arguably* better qualified by virtue of her experience, this hardly justifies an inference that defendants' proffered reason for appointing Clawson-Gregg is false.[4]

---

[3]Maiorana, too, testified that Hill could have applied and been considered for the position *if* there had been a vacancy, but there was no vacancy. Maiorana dep. pp. 121-22, J.A. 484-85.

[4]Apart from Hill's subjective belief and argument, there is no evidence that her extensive prior experience at WRCS would necessarily have rendered her better qualified for the Corporate Director position. Unlike Clawson-Gregg, Hill appears not have been actively pursuing her Bachelor's Degree, had no prior experience at Trumbull, and had not demonstrated managerial skills and competence.

Second, Hill contends defendants violated the WRCS job posting policy by appointing Clawson-Gregg without first posting the position and giving other current employees a chance to apply for it. The cited policy reflects hospital management's preference for filling position vacancies by promoting from within and provides that "*vacancies may be* announced on the bulletin board for a period of five (5) working days with the specific qualifications for each position clearly described in the job posting notice." WRCS Standard Policy & Procedure Instructions, J.A. 491 (emphasis added). The policy cited by Hill is couched in precatory, not mandatory, language.[5] Moreover, its applicability is dubious inasmuch as Clawson-Gregg's "appointment" appears not to have represented the filling of a "vacancy." Again, the asserted policy violation does not impugn the truthfulness of defendants' given reason for appointing Clawson-Gregg.

Third, Hill contends preferential treatment was evident in Clawson-Gregg's earlier promotion to Manager of Non-Invasive Cardiology Services in June 2000, which set the stage for her appointment to Corporate Director in the summer of 2001. Yet, it is undisputed that the Non-Invasive Manager position had been posted; that Clawson-Gregg had been performing some of the duties of the position while applications were sought; and that Clawson-Gregg applied for the position, whereas Hill did not. Clawson-Gregg's earlier promotion does not therefore evidence race discrimination.

---

[5]The discretionary nature of the policy is corroborated by the testimony of Maiorana, who understood the posting policy to be optional for managerial positions. Maiorana dep. pp. 32-33, J.A. 358-59.

Fourth, Hill points out that when she was appointed to the position of Technical Director of the PVDC in 1998, which entailed the added responsibility of assisting in obtaining and maintaining accreditation of the lab, she did not receive a raise, whereas Clawson-Gregg did receive a raise upon her appointment to Corporate Director. She contends this disparate treatment is evidence of race discrimination. Yet, when the description of Hill's added duties is compared with the duties included within Clawson-Gregg's responsibilities as Corporate Director, summarized above at p.10, it becomes obvious that the two positions are not comparable in all relevant respects. The asserted disparity does not, therefore justify an inference of race discrimination. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (to justify inference of discrimination, disparate treatment received by comparable non-minority employee must be shown to have involved employee similarly situated in all relevant respects).

Fifth, Hill cites Cicchillo's recognition of the need for minority hiring and advancement opportunities. Defendants contend that recognition of this need prompted the hospital to offer educational assistance to deserving minority candidates. In fact, they contend Patricia Hill had herself received such affirmative assistance when Forum Health's predecessor, Youngstown Hospital Association, paid for her education as she obtained her Associate's Degree in Nursing at Youngstown State University in the early 1970's. Defendants contend this refutes the charge that Hill is the victim of race discrimination. Obviously, neither circumstance has much if any relevance to the question whether race discrimination played a role in Clawson-Gregg's appointment to Corporate Director.

Hill maintains, however, that there is a continuing need for advancement of minority employees at the Forum Health hospitals. She contends this need is substantiated by a March 7, 2000 petition purportedly signed by over 100 minority employees of Forum Health. The text of the petition is as follows:

> We the minority employees of Forum Health have decided to bring our concerns to the forefront. For the past several months there have been noticeable changes in the administrative staff. The ratio of minority administrators to the number of minority employees is abysmal at best. The representation of the minority patient population is appalling. We the minority employees of Forum Health want to begin an ongoing open and forthright dialogue with current management to rectify this situation immediately. There must be higher representation of minority administrators within the Forum Health system.

J.A. 496-501.

At the outset, we note that the petition represents hearsay, *i.e.*, an unsworn, out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Hill has not even argued that the petition is admissible pursuant to a recognized hearsay exception. As hearsay, the petition is inadmissible to create a factual dispute to defeat a motion for summary judgment. *Sperle v. Michigan Department of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002).

Moreover, the circumstances surrounding the preparation and presentation of the petition to the administration are not disclosed in the record. Neither is the petition accompanied by any statistical information regarding the ratio of minority administrators to minority employees or the number of minority applicants for administrative positions or the relative qualifications of those applicants. Further, the petition predated Clawson-Gregg's appointment as Corporate Director by

over a year. Hence, the informal petition is both inadmissible and utterly devoid of legitimate

probative value to show pretext in this case.

Sixth, Hill contends defendants' reliance on restructuring of management as justification for

their actions is unworthy of belief because Forum Health's discriminatory promotion practices

preceded the reorganization. This bald statement is not supported by citation to anything in the

record. It represents no evidence that defendants' legitimate nondiscriminatory reason is false and

no evidence that Clawson-Gregg's appointment was the product of race discrimination.

In response to defendants' explanation, plaintiff was obliged to come forward with evidence

showing that the explanation is not true and that race discrimination was the real reason that she was

not considered for the Corporate Director position. In *Reeves v. Sanderson Plumbing Products, Inc.*,

530 U.S. 133, 143-49 (2000), the Supreme Court defined this burden specifically. The court

confirmed first that the plaintiff always retains the burden of proving intentional discrimination. *Id.*

at 143. Yet, the court recognized that evidence of the falsity of the employer's explanation, coupled

with the elements of the plaintiff's *prima facie* case, could possibly, even without additional

evidence of discrimination, justify an inference of discrimination. *Id.* at 147-48. Whether the

inference could be justified under such circumstances depends on a number of factors, including "the

strength of the plaintiff's prima facie case, the probative value of the proof that the employer's

explanation is false, and any other evidence that supports the employer's case and that may properly

be considered on a motion for judgment as a matter of law." *Id.* at 148-49.

Applying this teaching in this case, it is obvious that plaintiff failed to carry her burden of

showing pretext. First, as explained above, her *prima facie* case, even if barely adequate, is

manifestly weak. Second, defendants' legitimate nondiscriminatory explanation is well-supported and reasonable. Third, Hill's attempt to expose defendants' explanation as false or unworthy of credence is premised on no more than a scintilla of evidence and is totally unavailing. Having failed to adduce evidence on which a reasonable trier of fact could conclude that defendants' explanation is false, there is no plausible evidentiary basis for an inference that race discriminatory animus was the true motivation for Clawson-Gregg's appointment. Accordingly, the district court did not err in concluding that plaintiff failed to show pretext. There is no genuine issue of material fact and defendants were properly awarded summary judgment on plaintiff's failure to promote claim.

### III.  CONCLUSION

For the foregoing reasons, we conclude that the judgment of the district court, awarding summary judgment to defendants, must be and is hereby **AFFIRMED**.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment and in part II of the majority opinion.** I concur in the judgment, but I do not agree with the majority's conclusion that a retaliation claim was never presented to the district court. Clearly, if a claim is raised in a motion or brief opposing summary judgment, we should consider it. *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 345 (6th Cir. 2001). The majority states that Hill's "isolated references" to retaliation "in no way represent an attempt to state a distinct retaliation *claim*." However, Hill's several references to retaliation in her brief in opposition do present a claim of retaliation. *See* J.A. at 434-35 (Opp'n to Defs. Mot. for Summ. J.) ("The discharge of Hill was only a pretext to the retaliation for her filing a discrimination charge with the Equal Employment Opportunity Commission and her vocalization of the discriminatory conduct of the Defendants."); J.A. at 443 (Opp'n to Defs. Mot. for Summ. J.) ("The discipline of Hill was only a pretext to the retaliation for her filing a discrimination charge . . ."); J.A. at 443 (Opp'n to Defs. Mot. for Summ. J.) (describing alleged hostility towards Hill as a result of the fact that she filed a discrimination charge); J.A. at 448 (Opp'n to Defs. Mot. for Summ. J.) (discussing the alleged "retaliatory discharge"). Hill may not have presented her claim of retaliation in the most precise manner, but these statements present it nonetheless.

We should address the merits of Hill's retaliation claim in spite of the fact that the district court did not review this issue. *See Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000) ("[B]ecause a grant of summary judgment is reviewed *de novo*, this court may affirm the judgment of the district court on any grounds supported by the record, even if they are different from

those relied upon by the district court.").  Hill must demonstrate the following in order to establish

a prima facie case of retaliation pursuant to Title VII:

> 1) [she] engaged in activity that Title VII protects; 2) defendant knew that [she] engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists.

*Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).  Forum Health asserts that Hill has

failed to demonstrate a causal connection between her termination and the fact that she filed a

discrimination complaint.  Br. Appellee at 53.  "To establish the causal connection that the fourth

prong requires, the plaintiff must produce sufficient evidence from which one could draw an

inference that the employer would not have taken the adverse action against the plaintiff had the

plaintiff not engaged in activity that Title VII protects."  *Abbott*, 348 F.3d at 543.  The record

demonstrates that Forum Health would have terminated Hill's employment even if she had not filed

a complaint with the EEOC or spoken to her superiors regarding her concerns.  *See, e.g.*, J.A. at 279

(Incident Report) (noting Hill's failure to clock in and out as required on September 13 and 14,

2001); J.A. at 280 (Incident Report) (noting that Hill hung up on Clawson-Gregg on October 1,

2001, and that this had happened before); J.A. at 399 (Incident Report) (describing an incident in

which Hill failed to call for overtime approval on November 20, 2001, and hung up on Clawson-

Gregg on November 21, 2001); J.A. at 285 (Incident Report) (explaining that Hill changed her

schedule without approval on October 4, 5, and 6, 2002, that she had failed to renew the

accreditation of the Peripheral Vascular Lab on which she had previously claimed to have been

working, and that there were numerous errors in her reports); J.A. at 284 (Letter dated October 25,

2002 from Sonya R. Clawson-Gregg to Patricia A. Hill) (stating that Hill had missed two meetings and that her employment with Forum Health was terminated). Hill did not provide sufficient evidence to the contrary, and summary judgment for Forum Health on the retaliation claim is proper. Therefore, I concur in the judgment and in part II of the majority opinion affirming the grant of summary judgment on the failure-to-promote claim.