NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0149n.06

No. 20-3854

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

PAUL NEALY,

      Plaintiff-Appellant,

v.

SHELLY & SANDS, INC., et al.,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 23, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

BEFORE:  BATCHELDER, MOORE and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge.  Paul Nealy, an African-American union member, sued his former employer, Shelly & Sands, Inc., alleging race-based discrimination and retaliation.  The district court dismissed his complaint, holding that the collective-bargaining agreements ("CBAs") between his union and Shelly & Sands required him to arbitrate his claims.  He now appeals.  For the following reasons, we affirm the district court's judgment.

I.

In March 2020, Nealy filed a complaint in the U.S. District Court for the Southern District of Ohio raising claims against his former employer Shelly & Sands and his former supervisor, Ryan Grezlik, under the Reconstruction Civil Rights Act, 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and the Ohio Laws Against Discrimination, Chapter 4112 of the Ohio Revised Code.  He alleged that Defendants discriminated against him on the basis of race and retaliated against him for his good-faith complaints about racism by denying him

a promotion and by failing to return him to work at the beginning of the construction season. Nealy's complaints about racism included reporting alleged discriminatory treatment to Shelly & Sands's Equal Employment Officer.

Defendants filed a motion to dismiss for lack of subject-matter jurisdiction, attaching Nealy's CBAs with Shelly & Sands. Defendants argued that Nealy's claims constituted "equal opportunity claims," which he could bring only through arbitration according to the CBAs' arbitration provisions. Nealy responded, countering that the CBAs did not "clearly and unmistakably waive his rights to a judicial forum" for his claims.

Two substantially identical CBAs governed Nealy's employment at the time the events underlying Nealy's allegations arose. Section 8.4 of each CBA (the "antidiscrimination provision") provides for equal opportunity in employment and bans race-based discrimination:

> 8.4 Non-Discrimination: It is a condition of this agreement to provide equal opportunity in Employment for all qualified persons, and to prohibit discrimination in employment because of race, creed, color, sex, age or national origin. There shall be full compliance with all applicable Federal and State Statutes, regulations, rules and orders of appropriate Federal or State agencies having jurisdiction over the subject matter of discrimination in employment.

Also, Article VI of each CBA provides for grievance and arbitration procedures for any dispute arising out of the CBA. Specifically, Section 6.2b (the "arbitration provision") requires any "equal employment opportunity" claims arising from either the CBA itself or "under any federal, state or local fair employment practices law" to be addressed pursuant to the CBA's grievance and binding arbitration provision:

> 6.2b Any and all claims regarding equal employment opportunity provided for under this Agreement or under any federal, state or local fair employment practices law shall be exclusively addressed by an individual employee or the union under the grievance and binding arbitration provision of this agreement.

As such, Article VI provides for a four-step grievance and arbitration process.

The district court granted Defendants' motion to dismiss. Nealy timely appeals.

## II.

We consider a Rule 12(b)(1) motion to dismiss based on a failure to arbitrate as a motion to dismiss for failure to state a claim upon which relief may be granted. *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014). We review de novo a district court's grant of a motion to dismiss for failure to state a claim. *Torres v. Vitale*, 954 F.3d 866, 871 (6th Cir. 2020). Furthermore, we review de novo a district court's holding regarding the arbitrability of a dispute. *Simon v. Pfizer, Inc.*, 398 F.3d 765, 772 (6th Cir. 2005).

## III.

The Federal Arbitration Act ("FAA") governs arbitration agreements. 9 U.S.C. § 1 *et seq.* The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable," except for legal or equitable grounds "for the revocation of any contract." 9 U.S.C. § 2. Following our "'duty to interpret [an arbitration] agreement and to determine whether the parties intended to arbitrate grievances concerning' a particular matter," *Granite Rock Co. v. Int'l Broth. Of Teamsters*, 561 U.S. 287, 301 (2010) (quoting *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 651 (1986)), we must "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Moreover, "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009).

The issue here is whether the valid arbitration agreement's scope encompasses Nealy's § 1981, Title VII, and Ohio law antidiscrimination claims. *See Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (stating that the second step of analyzing whether a dispute is subject to arbitration is to ascertain the agreement's scope).

A.  LISTING OF SPECIFIC STATUTES

Nealy argues that he did not waive his right to a judicial forum for his statutory claims because neither the antidiscrimination provision nor the arbitration provision in the CBAs specifically lists § 1981, Title VII, or Chapter 4112 of the Ohio Revised Code.  We disagree.

A waiver of statutory rights to a judicial forum in a CBA must be "clear and unmistakable." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998).  In *Wright*, a general arbitration clause for "[m]atters under dispute" was insufficiently clear because it neither contained a specific antidiscrimination provision, nor did it "explicit[ly] incorporate[] . . . statutory antidiscrimination requirements."  *Id.*  The CBA also stated that "[a]nything not contained in this Agreement shall not be construed as being part of this Agreement" and that "[i]t is the intention and purpose of all parties hereto that no provision or part of this Agreement shall be violative of any Federal or State Law."  *Id.* at 81.  That language was insufficient to "mak[e] compliance with the [Americans with Disabilities Act (ADA)] a contractual commitment that would be subject to the arbitration clause." *Id.*

Following *Wright* we held that a CBA did not "clearly and unmistakably" require arbitration of an ADA claim where the CBA contained a non-discrimination clause prohibiting disability discrimination against employees and, in another section, provided that "[a]ny grievance arising under the terms of this contract or any alleged violation thereof shall be handled" according to the CBA's prescribed grievance and arbitration procedure.  *Bratten v. SSI Servs., Inc.*, 185 F.3d

625, 627–28, 631–32 (6th Cir. 1999). In *Bratten*, the CBA's reference to disability discrimination did not necessarily refer to discrimination under the ADA because it could have encompassed only disability discrimination under Title VII, which the provision explicitly referenced. *Id.* at 631. Moreover, the antidiscrimination provision, on its own, did not automatically require arbitration of statutory claims of discrimination simply because the CBA also contained a separate arbitration clause. *Id.* at 631–32. Importantly, the arbitration clause mentioned neither statutory claims nor the antidiscrimination provision, and the antidiscrimination provision did not refer to the arbitration provision. *Id.* at 631. The presence of an antidiscrimination clause, on its own, did not require union members to arbitrate statutory claims of discrimination. *Id.* at 631–32.

A year later, we similarly held that a CBA with a "general anti-discrimination provision" that included a prohibition on disability-based discrimination did not waive a union member's rights to bring his ADA claim in court. *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 654 (6th Cir. 2000). That CBA included a separate arbitration section broadly defining "a grievance as 'any controversy or dispute arising from the interpretation and/or application of the terms and work conditions under this labor agreement.'" *Id.* at 654. Again, the antidiscrimination clause did not explicitly mention arbitration, and the arbitration provisions did not mention statutory claims of discrimination. *Id.*

Nealy relies on *Wright, Bratten*, and *Kennedy* to argue that citation to specific statutes in the CBAs is necessary for the arbitration provision to cover claims brought under those statutes. The holdings in those cases, however, hinged not on the presence or absence of citations to any particular statute, but on the lack of any language making it clear and unmistakable that the arbitration provision applied to the relevant statutory claims in the first place. In *Bratten*, for example, there was no explicit reference at all to statutory claims in the arbitration provision;

5

rather, the operative language referred only to "[a]ny grievance arising under the terms of this contract" without any mention of statutory discrimination claims. 185 F.3d at 631–32. In that context, we noted the absence of any citation to an antidiscrimination statutory provision because that would be the only way to know that the employer was incorporating such a law into the agreement and thereby making a dispute under that law a "grievance arising under the terms of the contract." In contrast, the CBAs here specifically require statutory claims of equal employment opportunity to be arbitrated in the arbitration provision.

The CBAs at issue here differ fundamentally from those at issue in *Wright*, *Bratten*, and *Kennedy*. Not only does the antidiscrimination provision explicitly require "full compliance with all applicable Federal and State Statutes, regulations, rules and orders of appropriate Federal or State agencies having jurisdiction over the subject matter of discrimination in employment," but the grievance and binding arbitration provision also explicitly refers to "claims regarding equal employment opportunity . . . under any federal, state or local fair employment practices." Thus, the plain language of the contract indicates the parties' mutual intent to require any "equal employment opportunity" statutory claims—which clearly encompass claims of racial discrimination in employment under § 1981, Title VII, and the Ohio Laws Against Discrimination—to be submitted to arbitration before suit may be brought in court. *See Darrington v. Milton Hershey School*, 958 F.3d 188, 194–95 (3d Cir. 2020) ("The clear-and-unmistakable-waiver standard is satisfied if a collective bargaining agreement, interpreted according to applicable contract-interpretation principles, clearly and unmistakably waives a judicial forum for statutory claims."). The CBAs' language is "clear and unmistakable."

B.  RETALIATION CLAIMS

Nealy posits that, even if the CBAs do require him to submit his claims of discrimination to arbitration, the CBAs' arbitration agreement does not reach his retaliation claims.  Nealy assumes that retaliation must be equivalent to, or a subset of, discrimination under the relevant statutes to be included in the CBAs' arbitration provision.  It is not immediately clear why that would be necessary, when the arbitration provision in section 6.2b provides that "[a]ny and all claims regarding equal employment opportunity . . . under any federal, state or local fair employment practices law" must be addressed according to the CBAs' grievance and arbitration provision.  Thus, our inquiry is whether retaliation claims under § 1981, Title VII, and the Ohio Laws Against Discrimination constitute "equal employment opportunity" claims under federal and state "fair employment practices law."

Title VII defines retaliation as a form of discrimination on the basis of an employee's "oppos[ition to] any practice made an unlawful employment practice by this subchapter, or . . . charge, testi[mony], assist[ance], or participat[ion] in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Section 1981 encompasses employment-related retaliation claims.  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454–55 (2008).  And Ohio Rev. Code § 4112.02(I) likewise prohibits retaliation, defined similarly as in Title VII, albeit by "any person" rather than strictly by employers against employees.  Each of these laws aims to prevent unfair practices in employment that hinder employees' equal access to opportunity: namely, an employer's discrimination against an employee for legitimate conduct.  *See CBOCS*, 553 U.S. at 456 (explaining that an antiretaliation law prohibits "discrimination that harms 'individuals based on . . . conduct'" (quotation omitted)).

Thus, Nealy's retaliation claims clearly fit within the term "equal employment opportunity" claims under federal and state "fair employment practices law."

IV.

For the foregoing reasons, we affirm the district court's dismissal of Nealy's claims.

No. 20-3854, *Nealy v. Shelly & Sands, Inc., et al.*

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I disagree with the majority's contention that "[t]he holdings in [*Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998), *Bratten v. SSI Servs., Inc.*, 185 F.3d 625 (6th Cir. 1999), and *Kennedy v. Superior Printing Co.*, 215 F.3d 650 (6th Cir. 2000),] hinged not on the presence or absence of citations to any particular statute, but on the lack of any language making it clear and unmistakable that the arbitration provision applied to the relevant statutory claims in the first place." Maj. Op. at 5. I read *Bratten* as supplying a bright-line rule. Explaining that "post-*Wright* courts appear to be in agreement that a statute must specifically be mentioned in a [collective bargaining agreement ("CBA")] for it to even approach *Wright*'s 'clear and unmistakable' standard[,]" the *Bratten* court held that "under a 'clear and unmistakable' standard, the ADA and other statutory claims must be expressly recounted in the CBA." *Bratten*, 185 F.3d at 631; *see also Kennedy*, 215 F.3d at 654 ("Nowhere does the Agreement reference the ADA. Therefore, under *Wright* and *Bratten* the Agreement cannot be construed as waiving Kennedy's rights to a judicial forum for his ADA claim."); *Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 194 & n.6 (3d Cir. 2020) (characterizing *Bratten* as the Sixth Circuit's "endors[ing]" a "bright-line approach[]").

Simply put, Nealy should prevail. Nowhere do the CBAs in this case cite 42 U.S.C. § 1981, Title VII, or Ohio's nondiscrimination statute. Under *Bratten*—and under similar First, Fourth, and Seventh Circuit precedent—the CBAs have not waived a judicial forum. *See Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 9 (1st Cir. 1999) ("CBA Articles 5 & 6, neither of which explicitly mentions employee rights under the ADA or any other federal anti-discrimination statute, pose no bar to the instant action."); *Carson v. Giant Food, Inc.*, 175 F.3d 325, 332 (4th Cir. 1999) ("When the parties use such broad but nonspecific language in the arbitration clause, they must include an 'explicit incorporation of statutory antidiscrimination requirements' elsewhere in the contract.")

9

(quoting *Wright*, 525 U.S. at 81); *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1135 (7th Cir. 2017) (determining that there is no clear and unmistakable waiver when "nowhere in Article VIII [of the CBA] or, for that matter, anywhere else in the agreement is there even a reference to the FLSA").

Because I would reverse the district court and remand for further proceedings, I respectfully dissent.