NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 23, 2012[*]
Decided May 24, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-3016

| | |
|---|---|
| WADE HARRISON PAMON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 09 C 5034 |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | |
| *Defendant-Appellee.* | Joan B. Gottschall, *Judge.* |

**O R D E R**

---

[*] After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Therefore the appeal is submitted on the appellant's brief and the record. See FED. R. APP. P. 34(a)(2)(C).

Wade Pamon, a former campus police officer at the University of Illinois at Chicago, appeals from a grant of summary judgment for the UIC Board of Trustees in his action under the Americans with Disabilities Act, 42 U.S.C. §§ 12111–17. Pamon had sued the board after the university did not reinstate him to his police job upon his recovery from a stroke. We affirm.

The following facts, drawn from the record in the district court (taking into account those facts "admitted" due to Pamon's noncompliance with local rules), are not in dispute. In 2001, thirteen years after becoming a campus police officer, Pamon suffered a stroke (cerebral hemorrhage) while off-duty; he was diagnosed as having an arteriovenous malformation (an abnormal tangle of blood vessels in the brain). The stroke left him unable to walk or take care of himself, but his condition improved and six months later he could drive and walk without assistance. By 2004 he could lift weights and use a treadmill, and the following year he could run.

In 2005 Pamon wrote UIC's Vice Chancellor of Administration that he wanted to return to his former police job. When Pamon received no response, he hired an attorney because, he testified at his deposition, he had "the distinct impression that [the university] didn't want to be bothered with me." Pamon's attorney contacted a human resources specialist at UIC's police department, who explained that Pamon needed to obtain medical clearance from University Health Services (UHS) before he could return to his former position. At Pamon's UHS appointment doctors in turn asked about the stroke and told him that he needed to obtain clearance from his neurologist. A medical clearance, in some circumstances, might also be contingent on an employee's undergoing a functional capacity examination (FCE) before reinstatement to ensure that he can perform the job duties in a manner safe for him, his fellow officers, and the public. A written progress note from Pamon's UHS visit stated that he might need an FCE before he could be reinstated. In the past ten years four campus police officers have been required to undergo FCEs before reinstatement.

Pamon subsequently underwent a cerebral angiogram, which verified that his arteriovenous malformation was healed. His neurologist reported that Pamon showed "complete healing" and "may return to work." Based on this report, a newly hired UHS nurse practitioner prematurely issued Pamon a return-to-work order—premature because Pamon should have been required to undergo an FCE, as the UHS and UIC police department promptly advised him. The university later scheduled three FCE appointments for Pamon, but each time he refused to attend because, he testified, he believed that the exam was required only for on-the-job injuries. After he refused to take the FCE, the police department neither called him back to work nor offered him any alternative employment.

In 2007 Pamon accepted a new job with the Illinois Department of Human Services and resigned from UIC in writing. At that time Pamon also ended the disability benefits he had been receiving since 2001 from the State Universities Retirement System. According to his deposition testimony, his new employer had ordered him to resign from UIC and terminate his benefits, lest he be fired from the new job due to "double-dipping." In 2008 he again switched jobs and began working for his current employer, the Illinois Department of Financial and Professional Regulation.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Pamon filed this federal suit in 2009 against UIC. (He later amended the complaint to name the board as the defendant.) He claimed that UIC violated the ADA by (1) failing to reasonably accommodate his disability and engage in the interactive process, 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.2(*o*); (2) impermissibly inquiring about his arteriovenous malformation and requiring an FCE, 42 U.S.C. § 12112(d)(4)(A), and (3) terminating his employment due to his disability, *id.* § 12112(a).

The district court granted summary judgment for the board. The court found, first, that Pamon could not establish a prima facie case under the ADA for failure to accommodate. The court assumed that Pamon was a qualified individual with a disability, see 42 U.S.C. §§ 12111(8), 12112(a), but found that he presented no evidence that the board failed to reasonably accommodate him, see *id.* §§ 12111(9), 12112(b)(5)(A). In the court's view, the record did not reflect that he ever sought an accommodation or any change in his job duties. Next, the court found no fact question as to whether the board impermissibly inquired into the nature or severity of Pamon's disability, see *id.* § 12112(d)(4)(A); all inquiries made by UHS doctors about his health condition and by the university about an FCE were job-related and consistent with business necessity. Finally, the court found that Pamon could not establish disability discrimination because he did not suffer an adverse employment action on account of his disability, see *id.* § 12112(a). He was the one who decided to resign; the board did not terminate or refuse to reinstate him.

On appeal Pamon contends that the district court erred in concluding that the board did not fail to reasonably accommodate him. He insists that it was the board's responsibility, not his, to propose a reasonable accommodation once it knew that he wanted to return to work. But the ADA imposes on an employee the "initial duty to inform the employer of a disability." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). As the district court noted, Pamon insisted throughout the time he sought reinstatement that he had no physical limitations and could perform all the duties required of his former position. Moreover, the court determined, his neurologist's letter stated that Pamon showed "complete healing" and therefore did not put the board on notice that he had a disability. Additionally, an ADA plaintiff must indicate to the employer that he desires an accommodation, see *id.*; see also *Jovanovic v. In-Sink-Erator Div. of Emerson Elec.*

*Co.*, 201 F.3d 894, 899 (7th Cir. 2000), but here, the court observed, nothing in the record suggests that Pamon ever sought from the board anything other than being returned to his previous job as a campus police officer.

Pamon also contends that the district court wrongly concluded that the board did not impermissibly inquire into the nature of his disability. He argues that it was improper for UHS doctors to ask about his stroke and for the university to subject him to an FCE because he had already obtained clearance from his neurologist and the nurse practitioner. But the ADA permits an employer to inquire into the nature or severity of an employee's disability if "such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 2112(d)(4)(A); see *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 565 (7th Cir. 2009). Here the district court found no fact question as to whether the inquiries into Pamon's stroke and an FCE were job-related and consistent with business necessity. As the court explained, Pamon's condition required that he obtain an FCE before reinstatement—his stroke-related injury was serious; his disability leave was extensive, lasting several years; and his desired job—his prior position as a campus officer—entailed strenuous physical demands. Not only had the university required several other officers to take an FCE before reinstatement, but the university's insistence upon Pamon's taking an FCE was consistent with its policy of requiring the exam so that the employee's safety as well as that of others would be ensured. See generally *Coffman*, 578 F.3d at 566. The FCE requirement was reasonable because the exam would help the employer to make an individualized assessment of Pamon's condition and his ability to do the job.

Finally, Pamon argues that the district court erred in finding that he did not suffer an adverse employment action because, he insists, the university "forced" him to resign and seek other employment after refusing to reinstate him. But we agree with the court that the record is devoid of evidence that Pamon suffered an adverse employment action. As he explained at his deposition, it was the Illinois Department of Human Services, *not* UIC, that ordered him to resign from UIC and end his disability benefits. Pamon followed that order and unilaterally resigned in writing from UIC. He cannot identify any fact issue concerning the adverse nature of the employment action.

AFFIRMED.