NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0623n.06

Case No. 19-1429

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRYAN GIPSON, | ) | |
| | ) | **FILED**<br>Dec 17, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TAWAS POLICE AUTHORITY; CITY OF | ) | DISTRICT OF MICHIGAN |
| EAST TAWAS, MICHIGAN; CITY OF TAWAS | ) | |
| CITY, MICHIGAN; MARK FERGUSON, | ) | |
| | ) | |
| Defendants-Appellees. | ) | **O P I N I O N** |

BEFORE: McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Bryan Gipson badly injured his back. He alleges that when his employers required him to undergo a functional capacity examination before returning to full duty as a patrol officer, they violated federal and state anti-discrimination law. The district court granted summary judgment to the defendants, finding that there was no genuine dispute of material fact and that Gipson was not entitled to relief. We agree and **AFFIRM**.

## I. BACKGROUND

Bryan Gipson had worked for the Tawas Police Authority (TPA) for a few years when he was in a serious car accident. Gipson hurt his back so badly that he was unable to return to work for over six months. When he did return, he needed accommodations. After a few months of

work, his doctor wrote notes saying he couldn't lift over twenty-five pounds, and he could only work the day shift. Even though the TPA accommodated these restrictions, Gipson's back injury still made work difficult. About one year after returning, Gipson went back on medical leave for an additional four months.

When Gipson returned to work the second time, he didn't return as a full-duty patrol officer. Gipson's doctor said that Gipson couldn't "perform the full duties required of a policeman" but he "should be able to perform light duties." The TPA was able to accommodate these limitations by placing Gipson in a temporary light-duty position where he would do work that could be "performed without the need for heavy lifting."

In the meantime, Chief Mark Ferguson worked on creating a new job description for TPA patrol officers. Prior to Gipson's return to work on light duty, the TPA did have a basic job description. But it was almost twenty years old, was compiled by a different police chief, and didn't provide any specific details about the physical job requirements of being a TPA officer. In drafting the new job description, Chief Ferguson consulted his own job experience and reviewed job descriptions used by other police departments, sometimes incorporating their exact language. He also circulated multiple drafts to Gipson and the rest of the police department and asked for feedback.

Back to Gipson. After Gipson had been on light duty for several months, he said he was ready to return to full duty without restrictions. And his doctor cleared him for work as a patrol officer. But Chief Ferguson said he wanted Gipson to take a functional capacity exam (FCE) to ensure that Gipson could safely perform the duties of a patrolman. Gipson didn't believe Chief Ferguson; to him it seemed like Chief Ferguson edited the job description and required the FCE to prevent him from staying at the TPA.

Still, Gipson took the FCE that the TPA scheduled for him. Over two days, the FCE tested Gipson's ability to perform the tasks listed on the recently updated job description, and Gipson's exam performance indicated that he could perform them without restrictions. So Gipson returned to full duty. But his return was short-lived. Gipson worked only for one week before he had to go on medical leave again. The lifting involved in the FCE had aggravated Gipson's back injury, and he couldn't physically manage the work anymore. Since that time, Gipson hasn't returned to work either at the TPA or with any other employer.

Gipson brought this lawsuit, alleging that the TPA, the City of East Tawas, the City of Tawas City, and Chief Ferguson (collectively, the defendants) violated the Americans with Disabilities Act (ADA) and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA).[1] Specifically, he argued that by requiring him to take an unreasonable FCE, they discriminated against him for having a disability and retaliated against him for seeking accommodations. After months of discovery, the defendants each moved for summary judgment. The district court granted summary judgment to the defendants, finding that Gipson could not "meet his prima facie case for discrimination or retaliation." Gipson timely appealed.

## II.    STANDARD OF REVIEW

"We review the district court's grant of summary judgment de novo." *Huckaby v. Priest,* 636 F.3d 211, 216 (6th Cir. 2011) (citing *Parsons v. City of Pontiac*, 533 F.3d 492, 499 (6th Cir. 2008)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] The district court found that its resolution of Gipson's ADA claims also resolved his PWDCRA claims because the PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally, though not always, resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763–64 (6th Cir. 2012) (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 597 (6th Cir. 2002)). None of the parties challenge this finding on appeal. Therefore, we assume that resolution of Gipson's ADA claims resolves his PWDCRA claims as well.

Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making our assessment, we view all evidence in the light most favorable to the non-moving party. *Leonard v. Robinson*, 477 F.3d 347, 353 (6th Cir. 2007).

### III.     ANALYSIS

Gipson alleges that the defendants violated the ADA when they required him to take an FCE to return to work as a full-duty policeman. Indeed, the ADA says that an employer "shall not require a medical examination," unless it "is shown to be job-related and consistent with business necessity."[2] 42 U.S.C. § 12112(d)(4)(A). After an employee-plaintiff establishes that he was an employee and that the employer required him to take a medical exam, it is the employer's burden to prove that the exam was job-related and consistent with business necessity. *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014). An employer can meet its burden by showing that "there [was] significant evidence that could cause a reasonable person to inquire as to whether [the] employee [was] still capable of performing his job." *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999). Further, the employer must prove that the individual who decided to require the medical exam was aware of this evidence. *See Kroll,* 763 F.3d at 623–25.

Here, there was ample evidence that would cause a reasonable person to question whether Gipson could perform his job. And Chief Ferguson, who made the decision to require the FCE, was fully informed of that evidence. Between his two medical leaves, Gipson had missed almost one year of work. Immediately before the FCE, Gipson worked only light office duty instead of

---

[2] The district court found that Gipson failed to plead an independent claim for an unlawful medical exam under § 12112(d)(4)(A). We assume without deciding that he did plead such a claim. And we "may affirm on a ground not relied on by the district court." *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005). Therefore, we can reach the merits of Gipson's medical examination argument.

full duty as a patrolman because his doctor said he wasn't physically capable of performing all of a police officer's duties. And during most of the time Gipson did work as a patrol officer, Gipson had restrictions on when he could work and what physical activity he could do at work. Chief Ferguson was confronted with ample objective evidence that would lead a reasonable person to inquire whether Gipson could perform the essential functions of a police officer. Gipson all but concedes this in his deposition and in his brief on appeal.[3] Gipson's Reply Br. at 3 ("Appellant admitted that performing the FCE may have been appropriate . . . .").

However, Gipson argues that even if requiring the FCE was appropriate, the FCE still wasn't permissible under the ADA because it wasn't "restricted to discovering whether [he could] . . . fulfill the essential functions of the job." *Sullivan*, 197 F.3d at 811–12. Basically, Gipson complains that the FCE was too broad in scope. The defendants, on the other hand, contend that the FCE was limited to the appropriate scope because it was specifically designed to test Gipson's ability to perform the essential tasks listed in the TPA's written job description. But Gipson challenges the job description, arguing that it doesn't accurately state the essential job functions of a TPA police officer. Specifically, Gipson alleges that the job description overstates the essential job functions when it says that officers "must regularly lift and/or move items of moderate weight and may occasionally lift and/or move items of heavy weight."

The defendants maintain that the job description is accurate. They argue that Chief Ferguson was "conscientious in his actions to update the patrol officer job description." While working on the document, he researched how other police stations described the job. He also

---

[3] Gipson does briefly argue that the fact that two doctors indicated that Gipson "was cleared to return to full duty without restrictions" before the FCE "calls into question the business necessity of requiring [Gipson] to perform the FCE." But Gipson "may not dictate the terms of his medical examination." *Pena v. City of Flushing*, 651 F. App'x 415, 422 (6th Cir. 2016) (quoting *Sullivan*, 197 F.3d at 809 n.2). If an employer is justified in requiring a medical exam, then the employer gets to decide who performs the medical exam.

sought feedback from TPA employees, the union, and labor counsel.  Moreover, the defendants stand behind the document's description that TPA police officers help in rescue operations, restrain and arrest suspected criminals, and perform searches.  According to Chief Ferguson, these tasks can involve lifting moderate to heavy weight.  A police officer might have to lift a human body in a rescue operation.  An officer might have to move furniture in a search during an investigation.  An officer might have to restrain a resistant arrestee and physically force him or her into a police car.  All of these things can involve lifting moderate to heavy weight, and they can arise when an officer is on his own and must do the lifting himself.

Gipson never disputes that an officer may have to perform the tasks listed above, nor does he dispute that these tasks could qualify as "essential duties."  He argues instead that his job just doesn't require him to lift moderate to heavy weight.  Gipson supports this assertion by explaining that he hasn't had to lift significant weight in his experience at the TPA.  But even if this general statement is true, it fails to create a genuine dispute of material fact.  The job description itself says that officers will only "occasionally lift and/or move items of heavy weight."  And Gipson acknowledges that "you never know what is going to happen when you're at work. You are constantly doing different things every day."  Further, an essential job function isn't always a frequent job function, especially when considering a job where employees are responsible for responding to unpredictable emergency situations.  *See Kroll,* 763 F.3d at 626 (citations omitted) (recognizing "that 'special circumstances' may exist in workplaces where employees . . . shoulder responsibility for public safety"); *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th Cir. 2009) ("The [Fire] Department has an obligation to the public to ensure that its workforce is both mentally and physically capable of performing what is doubtless mentally and physically demanding work.").  Even if Gipson has never been required to lift significant weight in his job,

that doesn't mean that being able to lift significant weight isn't essential for a police officer. Moreover, it isn't surprising that Gipson hasn't lifted significant weight on the job in recent years, since the TPA specifically accommodated his lifting restrictions. Soon after he returned to work after his accident, Gipson's doctor wrote a note that he shouldn't lift more than twenty-five pounds. And the TPA acquiesced, determining that "if there was something that needed to be lifted more than 25 pounds, somebody else would have to do it."[4] When Gipson returned from his second medical leave of absence to work on light duty, the TPA specifically assigned him "duties [that could] be performed without the need for heavy lifting."

Gipson also points to the accommodation itself as evidence that lifting was not an essential job function. His argument is that because the TPA accommodated his inability to lift, lifting must not be essential. But it is important that when Gipson took the FCE, he was preparing to return to the job "without restrictions." Thus, the FCE was meant to test his ability to perform *all* the essential duties of a TPA officer without any accommodations.[5] The lifting in the exam "would help [the TPA] make an individualized assessment of [Gipson's] condition and his ability to do the job." *Pamon v. Bd. of Trs. of Univ. of Illinois*, 483 F. App'x 296, 299 (7th Cir. 2012); *see also Sullivan*, 197 F.3d at 811–12 (citing 29 C.F.R. Part 1630, App. § 1630.14(c)).

Based on the evidence on the record, there's no genuine dispute about whether the FCE was job-related and consistent with business necessity. Therefore, the defendants are entitled to judgment as a matter of law on Gipson's medical examination claim under § 12112(d)(4)(A).

---

[4] Chief Ferguson didn't recall if another officer had ever done lifting for Gipson, but it was how the TPA intended to accommodate Gipson on full duty.

[5] If Gipson had requested lifting accommodations, the ADA would have allowed the TPA to require a similar FCE to assess Gipson's request. *See Kennedy v. Superior Printing Co.*, 215 F.3d 650, 656 (6th Cir. 2000). It would be odd to allow the TPA to test an employee's ability to lift significant weight if he seeks lifting accommodations but not allow it to test lifting ability if he says he no longer needs accommodations. If TPA officers must sometimes lift heavy weight on the job, as Gipson's earlier request for accommodations suggests they do, then the TPA can permissibly test an officer's lifting ability.

Because the FCE was legitimate, Gipson's discrimination and retaliation claims fail. In order to make out a prima facie case of either discrimination or retaliation, a plaintiff must show that there was an adverse employment action. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997) (discrimination claim); *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) (retaliation claim). A legitimate medical exam "ordered for valid reasons can neither count as an adverse job action nor prove discrimination."[6] *Sullivan*, 197 F.3d at 813; *see also Stone v. Bd. of Dirs. of Tenn. Valley Auth.,* 35 F. App'x 193, 200 (6th Cir. 2002). And Gipson has failed to allege any other adverse employment action. Thus, as a matter of law, he cannot make out a prima facie case of either discrimination or retaliation.

## IV.    CONCLUSION

For these reasons, we **AFFIRM** the district court's order granting the defendants summary judgment.

---

[6] We recognize that the definition of an "adverse employment action" for retaliation claims is broader than for discrimination claims. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–67 (2006). But even in a retaliation claim, we don't think that "adverse employment action" is broad enough to include a valid medical exam requested for legitimate business reasons. Otherwise, every employee who is required to take a medical exam when he requests accommodations could make out a prima facie case of retaliation.